EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales | 2026 TSPR 52 218 DPR ___ |
|---|---|

Número del Caso: ER-2026-0002

Fecha: 18 de mayo de 2026

Materia: Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales

ER-2026-02

RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de mayo de 2026.

En virtud de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 201-2003, 4 LPRA sec. 24 *et seq.*, el 19 de abril de 2013 emitimos la Resolución ER-2013-1 para adoptar un nuevo Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, sobre *Solemnidad de los procedimientos; fotografías, video, grabación y transmisión*. Mediante esa Resolución también implantamos el *Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan* (PECAM) y aprobamos el *Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales*.[1]

---

[1] *In re* Enmienda al Canon 15 de Ética Judicial y Establecimiento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan, 188 DPR 424 (2013). La Regla 12 de este Reglamento autorizó a la "Directora Administrativa o al Director Administrativo de los Tribunales a emitir cualquier directriz que sea necesaria para el mejor funcionamiento del programa experimental establecido […] e implantar cualquier medida u orden administrativa con el fin de cumplir con las disposiciones contenidas en [el Reglamento]".

El PECAM entró en vigor el 1 de julio de 2013. Al año de su vigencia, y con el propósito de cumplir con la encomienda dada por este Tribunal Supremo, el Secretariado de la Conferencia Judicial y Notarial (Secretariado) evaluó su efectividad y emitió un Informe. Con el beneficio de ese Informe, este Tribunal decidió mantener el PECAM de forma indefinida en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan. Además, extendimos el PECAM a la Sala 901 de Asuntos de lo Civil del Centro Judicial de San Juan y a la Sala 1104 de Asuntos de lo Criminal del mismo foro con el objetivo de brindar mayor acceso de la ciudadanía a su sistema de justicia y fomentar la transparencia de los procesos judiciales. Asimismo, dispusimos que cualquier otra extensión del programa experimental a salas adicionales se haría mediante resolución de este Tribunal, sin necesidad de enmendar el Reglamento para ese solo propósito.

Al presente, han transcurrido aproximadamente trece años desde que comenzó la vigencia del Reglamento del PECAM en su primera fase experimental, y casi once años desde que, a raíz de la evaluación inicial llevada a cabo por el Secretariado, aprobamos la expansión aludida. En la actualidad, afirmamos que la evolución de este programa se mantuvo en ascenso, al punto que, en la práctica, se expandió a todas las regiones judiciales de la isla. De este modo, le encomendamos al Secretariado evaluar nuevamente el funcionamiento del PECAM con miras a propender a que esta iniciativa continúe sirviendo su propósito de promover el acceso a la justicia de la ciudadanía y, ante eso, determinar si concurren las condiciones necesarias para que este adquiera carácter permanente. En cumplimiento con lo encomendado, el Secretariado evaluó la efectividad del PECAM durante el periodo que transcurrió desde agosto de 2019 hasta septiembre de 2024, y emitió un Informe. Asimismo, llevó a cabo un ejercicio de validación a través de encuestas dirigidas a miembros de la judicatura, abogados, abogadas, fiscales y personal de los medios de comunicación.

Con el beneficio de ese Informe y la retroalimentación de las personas encuestadas, derogamos el Reglamento del PECAM y aprobamos el *Programa de Cobertura Electrónica y Difusión de Procesos Judiciales* (PROCEDI) y su Reglamento correspondiente. Con este proceder, ponemos fin a la etapa experimental de la cobertura electrónica de procesos judiciales que representó la aprobación del PECAM y su Reglamento. De este modo, damos carácter permanente a la cobertura electrónica, de conformidad con las disposiciones del Reglamento del PROCEDI, tanto en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan -donde gozaba de carácter indefinido desde 2015- como en la Sala 901 de Asuntos de lo Civil y la Sala 1104 de Asuntos de lo Criminal del mismo tribunal, a las que extendimos el PECAM. Del mismo modo, se decreta la aplicabilidad del Reglamento del PROCEDI con carácter permanente a todos los salones de sesiones de

las trece regiones judiciales, así como al Tribunal Supremo y Tribunal de Apelaciones.

El Reglamento del PROCEDI entrará en vigor el 1 de octubre de 2026. Se le ordena al Director Administrativo de los Tribunales que enmiende o emita cualquier directriz, medida u orden administrativa que sea necesaria para su implantación.

Notifíquese por correo electrónico al Director Administrativo de los Tribunales; al Juez Administrador del Tribunal de Apelaciones; a todos los jueces administradores y a todas las juezas administradoras regionales; a la Secretaria del Tribunal de Apelaciones; a todas las secretarias regionales, al Director de la Oficina de Prensa; a la Directora de la Oficina de Comunicación; a la Directora de la Oficina de Educación y Relaciones con la Comunidad, y a la Directora del Secretariado de la Conferencia Judicial y Notarial.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite un Voto particular de conformidad. El Juez Asociado señor Martínez Torres emite un Voto particular de conformidad al cual se une el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Candelario López. El Juez Asociado señor Estrella Martínez emite un Voto particular de conformidad. El Juez Asociado señor Colón Pérez emite un Voto particular de conformidad. El Juez Asociado señor Candelario López emite una Voto particular de conformidad. La Jueza Asociada Rivera Pérez emite un Voto particular de conformidad en parte y disidente en parte. La Jueza Asociada señora Pabón Charneco emite un Voto particular disidente al cual se une el Juez Asociado señor Feliberti Cintrón.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

# REGLAMENTO DEL PROGRAMA DE COBERTURA ELECTRÓNICA Y DIFUSIÓN DE PROCESOS JUDICIALES (PROCEDI)*

*Según aprobado en *In re Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales*, Resolución ER-2026-02, aprobada el 18 de mayo de 2026, 2026 TSPR ___, ___ DPR ___ (2026).

# REGLAMENTO DEL PROGRAMA DE COBERTURA ELECTRÓNICA Y DIFUSIÓN DE PROCESOS JUDICIALES (PROCEDI)

## TABLA DE CONTENIDO

Regla 1. Título ........................................................................................................................1

Regla 2. Base legal .................................................................................................................1

Regla 3. Aplicación ................................................................................................................1

Regla 4. Propósito e interpretación .......................................................................................1

Regla 6. Principios generales .................................................................................................3

Regla 7. Petición para los procesos celebrados ante el Tribunal de Primera Instancia ...........4

Regla 8. Petición para los procesos celebrados ante el Tribunal de Apelaciones ...................5

Regla 9. Autorización, reconsideración y revisión .................................................................6

Regla 10. Restricciones..........................................................................................................7

Regla 11. Conferencia de abogados(as), materiales...............................................................8

Regla 12. Cobertura durante los procesos judiciales civiles ante el Tribunal de Primera Instancia.......9

Regla 13. Cobertura durante los procesos judiciales penales ante el Tribunal de Primera Instancia ....9

Regla 14. Cobertura durante los procesos ante el Tribunal de Apelaciones ...........................10

Regla 15. Cobertura durante los procesos ante el Tribunal Supremo.....................................10

Regla 16. Cobertura de los procesos judiciales celebrados a través de videoconferencias ...................11

Regla 17. Conducta y tecnología de los medios de comunicación .........................................11

Regla 18. Representante de los medios de comunicación enlace, grupo designado y acuerdos entre los medios de comunicación ...........................................................................................................13

Regla 19. Regulaciones y medidas adicionales .....................................................................14

Regla 20. Política de accesibilidad a la cobertura electrónica ...............................................14

Regla 21. Uso permisible del material grabado......................................................................14

Regla 22. Incumplimiento......................................................................................................15

Regla 23. Derogación .............................................................................................................15

Regla 24. Vigencia................................................................................................................15

# REGLAMENTO DEL PROGRAMA DE COBERTURA ELECTRÓNICA Y DIFUSIÓN DE PROCESOS JUDICIALES (PROCEDI)

## Regla 1. Título

Este reglamento se conocerá como el *Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales* (PROCEDI).

## Regla 2. Base legal

Este Reglamento se adopta conforme a la autoridad concedida al Tribunal Supremo de Puerto Rico por la Sección 7 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico, para adoptar reglas para la administración de los tribunales, y al Canon 15 de Ética Judicial de Puerto Rico.

## Regla 3. Aplicación

Este Reglamento regula las peticiones de los medios de comunicación, la cobertura electrónica durante los procesos judiciales mediante la toma de fotografías y la grabación de audio e imágenes, así como su reproducción y difusión por los medios de comunicación. Regirá en los procesos judiciales celebrados en el Tribunal de Primera Instancia, así como en las vistas ante el Tribunal de Apelaciones. No obstante, la cobertura electrónica de las vistas orales en el Tribunal Supremo se rige por lo dispuesto en la Regla 15 de este Reglamento.

## Regla 4. Propósito e interpretación

En concordancia con el Canon 15 de Ética Judicial de Puerto Rico y debido a que la cobertura electrónica de procedimientos judiciales es un asunto revestido de gran interés público, se adopta esta normativa con el propósito de acercar el sistema de justicia a los más altos valores de transparencia, fomentar la confianza del pueblo en su Judicatura y garantizar el acceso a la justicia de la ciudadanía. Estas reglas se interpretarán de forma que la cobertura electrónica debidamente autorizada provea un nivel de acceso a los procedimientos judiciales que, en la medida de lo posible, sea equivalente al acceso presencial de la comunidad al salón de sesiones.

## Regla 5. Definiciones

Los siguientes conceptos tendrán el significado que se expresa a continuación:

(a) *Cámaras fotográficas y equipo audiovisual de difusión*— incluye cualquier tipo de cámara fotográfica, cámara de televisión, grabadora de video o imagen, grabadora de audio, entre otros de igual naturaleza y para propósitos de grabación, transmisión, reproducción, difusión o toma de fotografías. Incluye todo tipo de accesorio como cables, micrófonos, trípodes y otro equipo similar.

(b) *Cobertura electrónica*— comprende la obtención de información del proceso judicial mediante la captación de imágenes o audio por cámaras fotográficas y equipo audiovisual de difusión. Incluye la toma de fotografías, grabación, reproducción y difusión de los procesos judiciales.

(c) *Difusión del proceso*— proceso de divulgación o propagación de cualquier grabación de imagen, grabación de audio, fotografía o información de los eventos que acontecen en el proceso judicial. Incluye la reproducción a través del uso de cámaras de televisión, ondas radiales, difusión mediante

1

plataformas digitales que permiten transmitir en directo vía Internet, entre otros medios de telecomunicación.

(d) *Funcionaria designada o funcionario designado*— funcionario(a) adscrito(a) a la Oficina de Prensa de la Oficina de Administración de los Tribunales, quien, junto con el(los) medio(s) de comunicación que haya(n) presentado una petición al amparo de este Reglamento, coordinará todo asunto relacionado con la difusión de los procedimientos y facilitará el fiel cumplimiento de las disposiciones contenidas en este Reglamento.

(e) *Juez administrador o jueza administradora*— el juez o la jueza del Tribunal de Apelaciones o el juez o la jueza superior, según aplique, designado(a) por la Jueza Presidenta o el Juez Presidente para administrar el Tribunal de Apelaciones o la región judicial del Tribunal de Primera Instancia a la que pertenece.

(f) *Juez o jueza que preside el proceso judicial*— el juez o la jueza del Tribunal de Primera Instancia ante quien se ventila el proceso judicial que se pretende difundir.

(g) *Medio(s) de comunicación*— toda aquella persona, organización o entidad cuya función sea obtener noticias con el propósito de informar al público, ya sea de forma escrita, oral, visual o gráfica. Incluye, pero sin limitarse a, agencias de noticias, estaciones de radio y televisión, diarios y semanarios de circulación nacional o regional, revistas y prensa especializada y digital (Internet).

(h) *Partes*— las personas litigantes nombradas en el expediente del caso.

(i) *Panel del Tribunal de Apelaciones*— los jueces y las juezas que constituyen el Panel del Tribunal de Apelaciones ante quienes se ventila el proceso judicial que se pretende difundir.

(j) *Participante del proceso*— todas las partes, los abogados y las abogadas, los y las fiscales, las personas víctimas o testigos, el personal del tribunal y el juez o la jueza que estén presentes mientras se desarrolla el proceso judicial.

(k) *Proceso judicial*—

(i) En materia civil se extiende, pero sin limitarse a, la celebración de vistas argumentativas y vistas en su fondo de aquellos asuntos y recursos asignados en las salas a las cuales aplique este Reglamento conforme a la Regla 3. El juez administrador o la jueza administradora conserva discreción para autorizar procesos judiciales o etapas del proceso judicial que no estén expresamente contempladas en este Reglamento.

(ii) En materia criminal comprende, pero sin limitarse a, la celebración de juicios por tribunal de derecho y por jurado, lecturas de fallo y vistas de lectura de sentencia. El juez administrador o la jueza administradora conserva discreción para autorizar procesos judiciales o etapas del proceso judicial que no estén expresamente contempladas en este Reglamento.

(l) *Reglamento*— *Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (PROCEDI)*.

(m) *Representante de los medios de comunicación*— persona autorizada para tomar fotografías o grabar el proceso judicial y que representa a uno de los medios de comunicación siguientes: televisión, prensa escrita, digital (Internet) y radial.

(n) *Sistema de cámaras del PROCEDI*— comprende el equipo de cámaras, audiovisual y de transmisión escogido por la Oficina de Administración de los Tribunales. Este puede estar instalado en las salas de los tribunales o ser portátil y colocarse en distintas salas cuando así se requiera.

(o) *Vista híbrida*— vista que se lleva a cabo en el salón de sesiones del tribunal, pero en la que alguna de las partes involucradas o alguna persona testigo participa del proceso a distancia, mediante el mecanismo de videoconferencia.

(p) *Vista presencial*— vista que se lleva a cabo en su totalidad en el salón de sesiones del tribunal.

(q) *Vista por videoconferencia*— vista que se lleva a cabo en su totalidad mediante el mecanismo de videoconferencia. Esto significa que, tanto las partes involucradas, como sus respectivas representaciones legales y personas testigos involucradas, así como el juez o la jueza que preside el proceso judicial, se encuentran a distancia y participan del proceso a través de alguna de las herramientas disponibles para posibilitar la videoconferencia.

## Regla 6. Principios generales

(a) Mediante las disposiciones de este Reglamento se busca colocar al público que acceda a la cobertura electrónica de un proceso judicial en igual posición que las personas que acceden a la sala como público visitante. En este sentido, las imágenes capturadas durante los procesos judiciales objeto de cobertura electrónica se limitarán a un plano general (*wide shot*) de la sala.

(b) El juez administrador o la jueza administradora del Centro Judicial donde se lleve a cabo el proceso o del Tribunal de Apelaciones permitirá la cobertura electrónica de los procesos judiciales siempre que los medios de comunicación y sus representantes cumplan satisfactoriamente con las disposiciones contenidas en este Reglamento y que no se afecten los procedimientos, los derechos de las partes y el acceso a la sede del tribunal por parte del personal o del público.

(c) Este Reglamento no limita la autoridad inherente y discrecional del juez o de la jueza que preside el proceso judicial de dirigir el proceso judicial ante su consideración y determinar que se incumplió con algún mandato.

(d) El juez o la jueza que preside el proceso judicial mantendrá la discreción para disponer aquellas limitaciones y exigencias que estime necesarias para garantizar la solemnidad y el decoro del proceso judicial y un ambiente de respeto.

(e) El juez o la jueza que preside el proceso judicial podrá adoptar cualquier medida necesaria y no prevista por este Reglamento, para garantizar la integridad y agilidad del proceso judicial.

(f) Los medios de comunicación observarán en el salón de sesiones una conducta apropiada de manera que prevalezca un ambiente de decoro y solemnidad, sin distraer a los y las participantes del proceso judicial ni obstaculizar el logro de un juicio justo e imparcial.

(g) La presencia de los medios de comunicación en un proceso judicial no afectará de modo alguno la determinación judicial que realice el juez o la jueza que preside el proceso judicial ante una moción de suspensión, de trasferencia de vista o de traslado del caso que legítimamente hiciese una parte o su representante legal.

(h) Ningún procedimiento será aplazado o suspendido con el único propósito de permitir que los medios de comunicación cubran el proceso judicial, haciendo uso de los privilegios concedidos por este Reglamento.

(i) Los privilegios concedidos en este Reglamento no se extienden a las partes ni a sus representantes legales, excepto el uso de grabadoras de audio o de equipo similar por parte de los abogados o de las abogadas para propósitos de representación legal, en conformidad con el Canon 15 de Ética Judicial.

3

(j) Los privilegios concedidos en este Reglamento se extienden exclusivamente a los medios de comunicación autorizados. Las personas particulares que formen parte del público no podrán utilizar medios electrónicos ni análogos para la captura de audio o imagen durante los procesos judiciales.

(k) Nada de lo dispuesto en este Reglamento varía o modifica de forma alguna las disposiciones de las Reglas de Conducta Profesional ni la interpretación que haya realizado el Tribunal Supremo sobre las normativas relacionadas con la conducta del abogado o de la abogada respecto a la publicidad de casos pendientes.

(l) Nada de lo dispuesto en este Reglamento restringirá de forma alguna los derechos que al presente poseen los medios de comunicación para informar a la comunidad sobre los procesos judiciales.

## Regla 7. Petición para los procesos celebrados ante el Tribunal de Primera Instancia

(a) Todo medio de comunicación que interese la cobertura electrónica de un proceso judicial deberá presentar una petición a esos efectos. Esta petición se presentará en la Secretaría del Centro Judicial donde se lleve a cabo el proceso o a través del medio electrónico dispuesto para esos fines, por lo menos diez días antes de la fecha asignada en el calendario para el inicio del proceso judicial. En casos extraordinarios y excepcionales, se podrá presentar la petición tan pronto el medio de comunicación advenga en conocimiento del señalamiento en el proceso judicial, siempre que acredite de modo expreso las razones por las que no le fue posible cumplir con el término aquí dispuesto. En estos casos, el juez administrador o la jueza administradora del Centro Judicial donde se presente la petición retendrá la discreción para evaluar si existe causa justificada para la demora.

(b) Hasta tanto se implemente la tecnología y se tomen las medidas administrativas necesarias para posibilitar que la parte peticionaria presente una petición de cobertura electrónica por medio de una plataforma electrónica, cuando la petición se presente por lo menos diez días antes de la fecha asignada en el calendario para el inicio del proceso judicial, el Secretario o la Secretaria del tribunal notificará, mediante correo electrónico, la presentación de la petición a las partes involucradas en el proceso, no más tarde del siguiente día laborable contado a partir de la fecha en que se presentó.

En los casos extraordinarios y excepcionales en que la petición se presente dentro de un término menor de diez días previos a la fecha asignada en el calendario para el inicio del proceso judicial, el juez administrador o la jueza administradora del Centro Judicial en que se presente la petición de cobertura electrónica impartirá al Secretario o a la Secretaria del tribunal las instrucciones pertinentes para que notifique a las partes involucradas.

En cualquier escenario, la parte peticionaria tendrá el deber de proveer la información de contacto de las partes o de alguna de las partes a quien o a quienes sea necesario notificar. En caso de no contar con los medios necesarios para obtener la información, será su responsabilidad informarlo al tribunal, en la misma petición, a fin de que el juez administrador o la jueza administradora del Centro Judicial pueda ordenarle a la Secretaría que la identifique para que lleve a cabo la notificación. Además, el Secretario o la Secretaria deberá remitir inmediatamente toda petición debidamente presentada a la atención del juez administrador o de la jueza administradora del Centro Judicial y a la Oficina de Administración de los Tribunales, a través del medio que esta designe mediante disposición administrativa.

(c) La petición deberá dirigirse al juez administrador o a la jueza administradora del Centro Judicial donde se lleve a cabo el proceso judicial y deberá incluir la información siguiente:

(1) el nombre del procedimiento y la fecha y hora de inicio,

4

(2) número del caso,

(3) información de contacto de las partes a ser notificadas, de tenerla disponible,

(4) nombre del juez o de la jueza que preside el caso,

(5) el tipo de cobertura electrónica que se interesa realizar, y

(6) una descripción del equipo que interesa utilizarse, incluso cualquier aparato o dispositivo análogo, digital o electrónico complementario y/o necesario.

(d) Los medios de comunicación presentarán una sola petición, correspondiente a la etapa del proceso judicial que desean sea objeto de cobertura electrónica, de conformidad con las disposiciones de este Reglamento. Como norma general, esta autorización se mantendrá vigente durante el resto de las etapas del proceso judicial hasta la resolución final del caso en el foro que autorizó la cobertura electrónica conforme a este Reglamento. Sin embargo, el juez o la jueza que preside el proceso judicial tendrá discreción para evaluar si, durante el transcurso de las etapas subsiguientes, sobrevienen circunstancias que ameriten revocar la autorización o bien solicitar una nueva autorización que permita volver a pasar juicio sobre la deseabilidad de continuar con la cobertura electrónica del resto del proceso judicial, de conformidad con lo dispuesto en este Reglamento.

**Regla 8. Petición para los procesos celebrados ante el Tribunal de Apelaciones**

(a) Todo medio de comunicación que interese la cobertura electrónica de una vista celebrada ante el Tribunal de Apelaciones deberá presentar una petición a esos efectos. Esta petición se presentará en la Secretaría del Tribunal de Apelaciones o a través del medio electrónico dispuesto para esos fines, por lo menos diez días antes de la fecha asignada en el calendario para llevar a cabo la vista. En casos extraordinarios y excepcionales, se podrá presentar la petición tan pronto el medio de comunicación advenga en conocimiento del señalamiento en el proceso judicial, siempre que acredite de modo expreso las razones por las que no le fue posible cumplir con el término aquí dispuesto. En estos casos, el juez administrador o la jueza administradora del Tribunal de Apelaciones retendrá la discreción para evaluar si existe causa justificada para la demora.

(b) Hasta tanto se implemente la tecnología y se tomen las medidas administrativas necesarias para posibilitar que la parte peticionaria presente una petición de cobertura electrónica por medio de una plataforma electrónica, cuando la petición se presente por lo menos diez días antes de la fecha asignada en el calendario para que se lleve a cabo la vista, el Secretario o la Secretaria del Tribunal de Apelaciones notificará, mediante correo electrónico, la presentación de la petición a las partes involucradas en el proceso, no más tarde del siguiente día laborable contado a partir de la fecha en que se presentó.

En los casos extraordinarios y excepcionales en que la petición se presente dentro de un término menor de diez días previos a la fecha asignada en el calendario para que se lleve a cabo la vista, el juez administrador o la jueza administradora del Tribunal de Apelaciones impartirá al Secretario o a la Secretaria del Tribunal de Apelaciones las instrucciones pertinentes para que notifique a las partes involucradas.

En cualquier escenario, la parte peticionaria tendrá el deber de proveer la información de contacto de las partes o de alguna de las partes a quien o a quienes sea necesario notificar. En caso de no contar con los medios necesarios para obtener la información, será su responsabilidad informarlo al tribunal, en la misma petición, a fin de que el juez administrador o la jueza administradora del Tribunal de Apelaciones pueda ordenarle a la Secretaría que la identifique para que lleve a cabo la notificación. Además, el Secretario o la Secretaria deberá remitir inmediatamente toda petición

debidamente presentada a la atención del juez administrador o de la jueza administradora del Tribunal de Apelaciones y a la Oficina de Administración de los Tribunales, a través del medio que esta designe mediante disposición administrativa.

(c) La petición deberá dirigirse al juez administrador o a la jueza administradora del Tribunal de Apelaciones y deberá incluir la información siguiente:

(1) el nombre del procedimiento y la fecha y hora de inicio,

(2) número del caso,

(3) información de contacto de las partes a ser notificadas, de tenerla disponible,

(4) panel del Tribunal de Apelaciones que atiende el caso,

(5) el tipo de cobertura electrónica que se interesa realizar, y

(6) una descripción del equipo que interesa utilizarse, incluso cualquier aparato o dispositivo análogo, digital o electrónico complementario y/o necesario.

## Regla 9. Autorización, reconsideración y revisión

(a) En ningún proceso judicial se permitirá el uso de cámaras fotográficas o de equipo audiovisual de difusión a menos que el juez administrador o la jueza administradora, en el ejercicio de su discreción, lo autorice por escrito. La autorización se notificará mediante correo electrónico a todas las partes de la acción judicial.

(b) Cualquiera de las partes podrá presentar una objeción a la petición presentada por cualquier medio de comunicación con no menos de cinco días de anticipación a la fecha asignada en calendario para el inicio del proceso judicial o tan pronto advenga en conocimiento de la petición. La objeción se presentará en la Secretaría del Centro Judicial donde se lleve a cabo el proceso o en el Tribunal de Apelaciones, según aplique, o a través del medio electrónico dispuesto para esos fines. El tribunal podrá aceptar objeciones luego de expirado dicho término si determina que existe justa causa para esto. El juez administrador o la jueza administradora resolverá tales objeciones en cualquier momento antes del inicio del proceso judicial y tomará en consideración los obstáculos que razonablemente impidan el logro de un juicio justo e imparcial.

El Secretario o la Secretaria del Centro Judicial donde se lleve a cabo el proceso o del Tribunal de Apelaciones, según aplique, notificará mediante correo electrónico la presentación de la objeción a las partes involucradas en el proceso, no más tarde del siguiente día laborable contado a partir de la fecha en que se presentó.

(c) La autorización o la denegación de la petición emitida por el juez administrador o la jueza administradora del Centro Judicial pertinente o del Tribunal de Apelaciones, según corresponda, está sujeta a reconsideración. La solicitud de reconsideración deberá presentarse en la Secretaría correspondiente o a través del medio electrónico dispuesto para esos fines, dentro del término de dos días siguientes a la notificación de la resolución de la petición. A su discreción, el juez administrador o la jueza administradora podrá permitir una objeción a la reconsideración. Si permite una objeción, deberá establecer un término para presentarla que sea cónsono con las disposiciones de esta Regla. La decisión en cuanto a la reconsideración se notificará mediante correo electrónico a todas las partes de la acción judicial.

(d) La determinación del juez administrador o de la jueza administradora del Centro Judicial que autorice o deniegue la petición es revisable ante el Tribunal de Apelaciones. Asimismo, la decisión del Tribunal de Apelaciones es revisable ante el Tribunal Supremo.

La determinación del juez administrador o de la jueza administradora del Tribunal de Apelaciones que autorice o deniegue la petición es revisable ante el Tribunal Supremo.

La solicitud de revisión se efectuará mediante una moción *ex parte*, la cual deberá incluir copia de la determinación del Tribunal de Primera Instancia o del Tribunal de Apelaciones, según corresponda. La solicitud deberá presentarse en la Secretaría correspondiente o a través del medio electrónico dispuesto para esos fines, dentro del término de tres días contados desde la notificación de la determinación tomada por el juez administrador o la jueza administradora del tribunal correspondiente, así como del Tribunal de Apelaciones, según aplique. El transcurso del término para solicitar la revisión se interrumpirá por la presentación oportuna de una solicitud de reconsideración ante el juez administrador o la jueza administradora del tribunal correspondiente. El término para solicitar revisión comenzará a cursar nuevamente a partir de la notificación de la resolución de la solicitud de reconsideración.

La persona que solicite la revisión notificará la moción *ex parte* a todas las partes de la acción judicial, así como al tribunal impugnado, dentro del término dispuesto para la presentación de la solicitud de revisión y así lo certificará con su firma en la moción.

El foro revisor podrá permitir objeciones a la solicitud de revisión, si así se solicita. Si permite una objeción, deberá establecer un término para presentarla que sea cónsono con las disposiciones de esta Regla. La decisión del tribunal revisor se notificará a todas las partes de la acción judicial. No se podrá solicitar la reconsideración de la determinación que emita el Tribunal de Apelaciones o el Tribunal Supremo en cuanto a una solicitud de revisión.

(e) En ningún caso la presentación de la solicitud de reconsideración o la presentación de la solicitud de revisión al Tribunal de Apelaciones o al Tribunal Supremo aplazará o suspenderá la celebración de los procesos judiciales.

(f) De autorizarse la cobertura electrónica de un proceso judicial, si uno o más medios de comunicación ha sometido una petición a tenor con este Reglamento, el juez o la jueza que preside el proceso judicial remitirá la petición o las peticiones al funcionario designado o a la funcionaria designada. Acorde con las disposiciones contenidas en la Regla 17 de este Reglamento, el funcionario designado o la funcionaria designada servirá de enlace con los medios de comunicación para establecer acuerdos en cumplimiento con las especificaciones de este Reglamento.

(g) De autorizarse la cobertura electrónica, el juez o la jueza que preside el proceso judicial podrá dirigir al medio de comunicación peticionario, junto con la notificación de autorización, las instrucciones que estime necesarias sobre la cobertura electrónica de la evidencia testifical, documental o ilustrativa que las partes podrían presentar. Esto no limita que, durante el proceso judicial, el juez o la jueza que preside el proceso judicial modifique o imparta nuevas instrucciones, de ser necesario. Estas instrucciones se impartirán en conformidad con lo establecido en la Regla 10(c) de este Reglamento.

## Regla 10. Restricciones

La cobertura electrónica autorizada quedará sujeta a las restricciones siguientes:

(a) La cobertura electrónica mediante el uso de cámaras fotográficas y de equipo audiovisual de difusión estará prohibida en todo procedimiento de naturaleza confidencial, tales como asuntos de familia y menores.

(b) La cobertura electrónica de un proceso judicial, ya sea completa o en parte, no es absoluta. El testimonio de cualquier persona puede excluirse o limitarse para protegerle y evitar su exposición a algún peligro potencial. De igual modo, y por las mismas razones, podrá excluirse o limitarse la difusión electrónica de cualquier tipo de prueba contemplada por las Reglas de Evidencia de Puerto Rico. La exclusión o limitación de un testimonio u otra prueba admisible puede ser a instancia de parte o *motu proprio* por el juez o la jueza que preside el proceso judicial. La determinación se efectuará en consideración al interés de la justicia de proteger los derechos de las partes y las personas testigos y para preservar el orden, la buena conducta, la solemnidad y el decoro que debe imperar en el proceso judicial. En el caso de los juicios por jurado que sean objeto de cobertura electrónica, las y los miembros del jurado se mantendrán en todo momento fuera de la toma de la cámara.

(c) El juez o la jueza que preside el proceso judicial podrá ordenar en cualquier momento que se suspenda el uso de cámaras fotográficas y de equipo audiovisual de difusión o podrá conducir el procedimiento fuera de sala para evitar la difusión de una exposición o imagen de naturaleza confidencial o por situaciones sensitivas, cuando así lo justifique el estado de derecho.

(d) No se permitirán las tomas de video o de fotografías cercanas al rostro (*close-ups o zoom-in*) de los y las participantes o de la evidencia documental o ilustrativa presentada durante el proceso judicial objeto de cobertura electrónica. De este modo, el público que acceda a la cobertura electrónica de un proceso judicial quedaría en igual posición en cuanto a su apreciación de lo que ocurre en el salón de sesiones, en comparación con las personas que acceden a la sala como público visitante, de conformidad con el principio general consignado en el inciso (a) de la Regla 6 de este Reglamento.

(e) Los y las representantes de los medios de comunicación que acudan al tribunal para realizar la cobertura electrónica de un proceso judicial, según autorizado en virtud de este Reglamento, deberán acreditar que se encuentran en gestiones oficiales. Se identificarán mediante la autorización del tribunal y una identificación con foto y firma.

(f) No se permitirá realizar entrevistas para la difusión ni tomar fotografías en los pasillos adyacentes a la entrada del salón donde se lleva a cabo el procedimiento o donde se estén efectuando otros procesos judiciales. Solo se permitirá en las áreas designadas para esto, que deben ser áreas retiradas de las entradas a los salones del tribunal (por ejemplo, en áreas cercanas a los elevadores o al final de los pasillos), de conformidad con la directriz u orden administrativa que regule el asunto.

(g) Se prohíbe tomar fotografías o grabar imágenes a través de las ventanillas o las puertas abiertas del salón. Esta prohibición incluye a todas las personas presentes en el salón durante la cobertura electrónica, así como a las y los miembros del Jurado.

## Regla 11. Conferencia de abogados(as), materiales

Para proteger el privilegio cliente-abogado(a) y el derecho de las partes a recibir representación legal en forma efectiva, no se permitirá tomar fotografías ni grabar o difundir imágenes o audio durante los recesos decretados luego de iniciado el proceso judicial ni durante las conferencias que se efectúen cuando el tribunal no se encuentre en sesión, entre las representaciones legales de las partes, entre abogados(as) y sus clientes, entre representantes legales de un(a) mismo(a) cliente(a) o entre el abogado o la abogada y el juez o la jueza que preside el proceso judicial, en el estrado. Tampoco se permitirá tomar video o fotografías de los materiales o los documentos localizados en las mesas de tales abogados o abogadas y fiscales.

**Regla 12. Cobertura durante los procesos judiciales civiles ante el Tribunal de Primera Instancia**

(a) Siempre que sea posible, los procesos judiciales civiles cuya transmisión se solicite y autorice se transmitirán a través del Sistema de cámaras del PROCEDI. El funcionariado designado por la Oficina de Administración de los Tribunales se encargará de tomar video y sonido según lo dispuesto en este Reglamento. Los medios de comunicación pueden difundir la imagen adquirida por el Sistema de cámaras del PROCEDI mediante las alternativas siguientes:

(1) El proceso judicial se podrá transmitir a través de la plataforma digital para transmisión en vivo designada para esos fines y los medios de comunicación podrán retransmitir la imagen, o

(2) los medios de comunicación pueden comparecer al centro judicial donde se lleve a cabo el proceso judicial y tomar la señal emitida por el Sistema de cámaras del PROCEDI.

Los medios de comunicación que presenten una petición de cobertura serán notificados de las alternativas disponibles para el proceso judicial solicitado.

(b) Cuando el proceso judicial no pueda transmitirse a través del Sistema de cámaras del PROCEDI, se permitirá la entrada de los medios de comunicación a la sala del tribunal, para que estos, en estricta observancia con las normas establecidas en este Reglamento, graben y transmitan dicho proceso.

**Regla 13. Cobertura durante los procesos judiciales penales ante el Tribunal de Primera Instancia**

(a) De ordinario, los procesos judiciales penales cuya transmisión se solicite y autorice se transmitirán a través del Sistema de cámaras del PROCEDI. El funcionariado designado por la Oficina de Administración de los Tribunales se encargará de tomar video y sonido según lo dispuesto en este Reglamento. Los medios de comunicación pueden difundir la imagen adquirida por el Sistema de cámaras del PROCEDI mediante las alternativas siguientes:

(1) El proceso judicial se podrá transmitir a través de la plataforma digital para transmisión en vivo designada para esos fines y los medios de comunicación podrán retransmitir la imagen, o

(2) los medios de comunicación pueden comparecer al centro judicial donde se lleve a cabo el proceso judicial y tomar la señal emitida por el Sistema de cámaras del PROCEDI.

Los medios de comunicación que presenten una petición de cobertura serán notificados de las alternativas disponibles para el proceso judicial solicitado.

(b) Cuando la autorización de cobertura electrónica recaiga sobre varios procesos judiciales simultáneos, el funcionariado designado por la Oficina de Administración de los Tribunales deberá dar preferencia a la transmisión de aquellos de naturaleza penal.

En los casos extraordinarios y excepcionales en que el Sistema de cámaras del PROCEDI no pueda transmitir un proceso judicial penal previamente autorizado, se permitirá la entrada de los medios de comunicación a la sala del tribunal para que estos, en estricta observancia con las normas establecidas en este Reglamento, graben y transmitan dicho proceso. Previo a esto, el funcionariado designado de la Oficina de Administración de los Tribunales convocará a una reunión al o la

representante de los medios de comunicación que sirva de enlace con el propósito de garantizar una transmisión ordenada.

Disponiéndose, además, que en estos casos los medios de comunicación deberán cumplir particularmente con las normas siguientes:

(1) que la cobertura electrónica sea equivalente al acceso presencial al salón de sesiones, como lo establece la Regla 4 de este Reglamento;

(2) que las imágenes capturadas se limiten a un plano general del salón de sesiones, sin distraer a los y las participantes del proceso judicial ni obstaculizar un juicio justo e imparcial, como se establece en la Regla 6 de este Reglamento;

(3) que se respete cualquier determinación de excluir o limitar la transmisión de un testimonio o cualquier tipo de prueba, que no se realicen tomas de video o fotografías cercanas al rostro de los y las participantes del proceso judicial y mantener a las y los miembros del jurado fuera de la toma de la cámara en todo momento, según se establece en la Regla 10 de este Reglamento; y

(4) que todo lo relacionado con la transmisión sea compatible con las disposiciones de este Reglamento.

## Regla 14. Cobertura durante los procesos ante el Tribunal de Apelaciones

(a) De ordinario, las vistas celebradas en el Tribunal de Apelaciones cuya transmisión se solicite y autorice se transmitirán a través del Sistema de cámaras del PROCEDI. El funcionariado designado por la Oficina de Administración de los Tribunales se encargará de tomar video y sonido según lo dispuesto en este Reglamento. Los medios de comunicación pueden difundir la imagen adquirida por el Sistema de cámaras del PROCEDI mediante las alternativas siguientes:

(1) El proceso judicial se podrá transmitir a través de la plataforma digital para transmisión en vivo designada para estos fines y los medios de comunicación podrán retransmitir la imagen, o

(2) los medios de comunicación pueden comparecer al Tribunal de Apelaciones y tomar la señal emitida por el Sistema de cámaras del PROCEDI.

Los medios de comunicación que presenten una petición de cobertura serán notificados de las alternativas disponibles para el proceso judicial solicitado.

(b) Cuando el proceso judicial no pueda transmitirse a través del Sistema de cámaras del PROCEDI, se permitirá la entrada de los medios de comunicación a la sala del tribunal, para que estos, en estricta observancia con las normas establecidas en este Reglamento, graben y transmitan dicho proceso.

## Regla 15. Cobertura durante los procesos ante el Tribunal Supremo

De ordinario, las vistas orales celebradas en el Tribunal Supremo cuya transmisión se solicite y autorice, o se ordene *motu proprio*, se transmitirán a través del Sistema de cámaras del PROCEDI. El funcionariado designado por la Oficina de Administración de los Tribunales se encargará de tomar video y sonido según lo dispuesto en este Reglamento. El proceso judicial se transmitirá a través de la

plataforma digital para transmisión en vivo designada para estos fines y los medios de comunicación podrán retransmitir la imagen cuando el Tribunal lo autorice.

Esta petición se presentará en la Secretaría del Tribunal Supremo o a través del medio electrónico dispuesto para esos fines, por lo menos diez días antes de la fecha asignada en el calendario para llevar a cabo la vista oral.

**Regla 16. Cobertura de los procesos judiciales celebrados a través de videoconferencias**

(a) Cuando se autorice una petición de cobertura electrónica en una vista que se lleve a cabo en su totalidad a través de videoconferencia, esta se transmitirá únicamente a través de la plataforma digital para transmisión en vivo designada para estos fines y los medios de comunicación podrán retransmitir la imagen.

(b) Los procesos judiciales que se lleven a cabo de manera híbrida, se transmitirán conforme a las Reglas 12, 13 y 14 de este Reglamento, según aplique.

**Regla 17. Conducta y tecnología de los medios de comunicación**

(a) Reglas para la toma de video y fotografía

(1) Los y las representantes de los medios de comunicación deberán preservar en todo momento un ambiente de solemnidad y respeto. La toma de imágenes salvaguardará la dignidad y el respeto de las personas que participen de los procesos judiciales que son objeto de cobertura electrónica.

(2) Los y las representantes de los medios de comunicación no pueden interrumpir o de manera alguna interferir en los procedimientos judiciales. A esos efectos, deberán seguir las instrucciones impartidas por el tribunal en todo momento.

(b) *Equipo técnico y personal*

(1) En el salón del tribunal estará permitido:

(i) Una cámara de televisión o de grabación de imagen portátil (con trípode), operada por un camarógrafo o camarógrafa. El tribunal podrá permitir discrecionalmente más de una cámara de televisión o de grabación de imagen, y

(ii) Dos fotógrafos o fotógrafas con una cámara fotográfica cada uno, con no más de dos lentes por cada cámara. El tribunal tendrá discreción para permitir más de dos fotógrafos o fotógrafas con el mismo equipo.

(2) Solo se permitirá el uso de un sistema de audio en el caso de grabaciones de imágenes con audio. Preferiblemente, el audio se capturará del sistema que al momento del proceso exista en el salón del tribunal. Si este resulta inadecuado, será responsabilidad de los medios de comunicación instalar, a su costo, los micrófonos y el alambrado necesario en los lugares que asigne el juez o la jueza que preside el proceso judicial o la funcionaria designada o el funcionario designado antes de que inicie el proceso judicial.

La instalación del equipo técnico o del sistema de audio deberá coordinarse con suficiente anticipación con la funcionaria designada o el funcionario designado como enlace. La instalación de este equipo no debe causar interrupción, molestia u obstrucción de los procesos, ni interferir con los horarios de sesiones en el tribunal o con la hora señalada para el inicio del proceso judicial.

(3) Los medios de comunicación deberán solicitar autorización para el uso de grabadoras de audio portátiles en el salón de sesiones en conformidad con lo establecido en la Regla 7 de este Reglamento. Se podrá permitir el uso de grabadoras de audio portátiles en el salón de sesiones sujeto a que su operación sea discreta y silenciosa.

(4) Los medios de comunicación no deberán perturbar o interrumpir el proceso judicial al experimentar problemas técnicos. El ajuste o la reparación del equipo técnico debe postergarse hasta que el juez o la jueza que preside el proceso judicial decrete un receso.

(c) *Criterios sobre luz y sonido*

(1) Los y las representantes de los medios de comunicación solo utilizarán cámaras fotográficas y equipo audiovisual de difusión que no produzcan luz o sonido. No se autorizará el uso de equipo alguno que requiera un dispositivo o aparato artificial de iluminación.

(2) Las cámaras fotográficas se programarán para su operación silenciosa.

(3) Será deber afirmativo de los y las representantes de los medios de comunicación demostrar al juez o a la jueza que preside el proceso judicial o a la funcionaria designada o al funcionario designado, previo a cualquier proceso judicial, que el equipo que se utilizará cumple con los criterios de luz y sonido enunciados anteriormente. La omisión de obtener tal aprobación impedirá el uso del equipo durante la celebración del proceso judicial.

(4) Los medios de comunicación deberán permanecer en silencio y abstenerse de emitir comentarios o realizar preguntas durante el proceso judicial.

(d) *Ubicación de los y las representantes de los medios de comunicación*

(1) Los y las representantes de los medios de comunicación y el equipo técnico a utilizar para la cobertura electrónica del proceso judicial se ubicarán en los lugares asignados por la funcionaria designada o el funcionario designado. Se procurará proveer un acceso razonable para la captación de imágenes del proceso judicial en consideración a la disponibilidad de espacio en cada tribunal.

(2) Todo el equipo debe estar en el lugar asignado y listo para funcionar con no menos de 15 minutos de antelación al inicio del proceso judicial. Los y las representantes de los medios de comunicación deberán ubicarse en el lugar asignado. Tendrán el deber de actuar de forma tal que no llamen la atención ni alteren el orden y decoro del procedimiento y deberán seguir las normas de vestimenta que se exigen al público en el tribunal.

(3) Excepto que otra cosa se disponga mediante Resolución, todo equipo no autorizado deberá localizarse fuera del salón del tribunal.

(e) *Movimiento durante el procedimiento*

Todo equipo se colocará o removerá del salón del tribunal antes de comenzar el proceso judicial, durante los recesos, o después de la suspensión del proceso judicial cada día. No se permitirá instalar o cambiar dispositivos o aditamentos (tales como lentes, tarjetas de memoria, rollos fotográficos, baterías, entre otros) dentro del salón del tribunal, excepto durante los recesos del proceso.

Los medios de comunicación no deberán moverse a través del salón con el propósito de tomar fotografías, captar tomas de vídeo o grabaciones de imagen o audio mientras se desarrolle el proceso judicial ni durante los recesos. Los fotógrafos, las fotógrafas, los camarógrafos y las camarógrafas podrán retirarse del salón del tribunal mientras se efectúe el proceso judicial, pero deberán aguardar hasta el receso para retirar las cámaras fotográficas fijas y las cámaras de televisión o de grabación de imagen.

(f) *Utilización de luz adicional*

Se realizarán modificaciones al alumbrado del salón del tribunal solo con la aprobación del juez o de la jueza que preside el proceso judicial. Tales modificaciones, de ser autorizadas, serán instaladas, mantenidas o removidas sin que se incurra en gastos públicos. Será responsabilidad de los medios de comunicación interesados sufragar todo gasto en el que se incurra como resultado de estas modificaciones.

(g) *Equipo electrónico adicional para recopilar y transmitir información escrita*

El juez o la jueza que preside el proceso judicial podrá permitir el uso de equipo electrónico adicional, tales como computadoras portátiles (*laptops*), teléfonos inteligentes (*smartphones*), tabletas (*tablets*), entre otros aparatos electrónicos o equipos similares, en sustitución de las herramientas tradicionales para recopilar y transmitir la información escrita a través de Internet, siempre que su operación sea discreta y silenciosa.

El juez o la jueza tendrá discreción para restringir o prohibir el uso de equipo electrónico adicional en los casos en que también restrinja o prohíba la cobertura electrónica por otros medios.

## Regla 18. Representante de los medios de comunicación enlace, grupo designado y acuerdos entre los medios de comunicación

(a) *Representante de los medios de comunicación enlace*

Cuando lo estime necesario para asegurar el fiel cumplimiento de las disposiciones de este Reglamento, la funcionaria designada o el funcionario designado podrá solicitar al medio o a los medios de comunicación que seleccione(n) un o una representante, preferiblemente mediante consenso. Este o esta representante servirá de enlace entre los medios de comunicación y la funcionaria designada o el funcionario designado. Además, será responsable de cumplir con las limitaciones de equipo y de personal que exige este Reglamento.

(b) *Grupo designado*

Cuando la transmisión a través del Sistema de cámaras del PROCEDI no sea posible y se autorice la cobertura electrónica de un proceso judicial a múltiples medios de comunicación, la funcionaria designada o el funcionario designado deberá seleccionar los medios de comunicación que comprenderán el grupo designado para tomar fotografías y grabaciones. Como criterio para la designación de este grupo, se utilizará el orden de recibo de las peticiones, en consideración a la hora y la fecha de presentación de la petición en la Secretaría del tribunal. Podrán considerarse, además, otros criterios establecidos mediante directrices o reglamentación para garantizar que los medios de comunicación autorizados que no formen parte del grupo designado puedan grabar o captar las imágenes y el audio del proceso judicial.

Excepto que el juez o la jueza que preside el proceso judicial disponga lo contrario, este grupo designado se constituirá de un máximo de cuatro personas que representarán a los medios de comunicación siguientes: televisión, prensa escrita, digital (Internet) y radial. Solo habrá una persona por cada empresa u organización mediática matriz, incluso sus subsidiarias, dependencias o corporaciones procedentes, salvo que los medios de comunicación lleguen a un acuerdo. La sustitución del o de la miembro del grupo designado por parte de la empresa o la organización mediática a la que representa requerirá notificación previa a la funcionaria designada o al funcionario designado.

13

Solo podrán utilizar equipo técnico los medios de comunicación seleccionados para formar parte del grupo designado. Cada miembro del grupo designado tendrá la obligación de facilitar oportunamente el acceso al equipo técnico utilizado para la cobertura electrónica a los medios de comunicación autorizados que no forman parte del grupo designado, para que estos puedan grabar o captar las imágenes y el audio del proceso judicial sin que tengan que requerir autorización adicional al tribunal. Ante esto, cada miembro del grupo designado deberá asegurar que el equipo técnico que utilizará para la cobertura electrónica tiene capacidad para reproducir las imágenes y el audio captado.

En casos de alta cobertura mediática, en los que se presenta una cantidad numerosa de peticiones, la funcionaria designada o el funcionario designado podrá convocar una reunión con los medios de comunicación peticionarios con el propósito de lograr acuerdos que permitan una difusión más amplia del proceso judicial. Los medios de comunicación designados deberán cumplir cabalmente con los acuerdos logrados. En caso de incumplimiento, aplicará lo dispuesto en la Regla 22 de este Reglamento.

(c) *Dilucidación de controversias*

El juez administrador o la jueza administradora, el juez o la jueza que preside el proceso judicial y el funcionario designado o la funcionaria designada se abstendrán de intervenir como mediadores o mediadoras en caso de surgir disputas relacionadas con acuerdos entre los medios de comunicación. En ausencia de un acuerdo, la controversia quedará sometida ante el juez administrador o la jueza administradora del foro judicial correspondiente.

## Regla 19. Regulaciones y medidas adicionales

La Jueza Presidenta o el Juez Presidente del Tribunal Supremo queda facultada(o) para emitir cualquier directriz administrativa que sea necesaria para asegurar el cumplimiento y mejor funcionamiento de este Reglamento.

## Regla 20. Política de accesibilidad a la cobertura electrónica

Una vez estén disponibles y sean asequibles las herramientas tecnológicas necesarias, los procesos judiciales objeto de cobertura electrónica conforme a este Reglamento que se transmitan mediante la plataforma digital oficial del Poder Judicial para esos fines, contarán con texto autogenerado estilo subtítulos para suplir las necesidades de las poblaciones con algún tipo de dificultad auditiva. De igual manera, se exhorta a los medios de comunicación que transmitan los procesos judiciales a utilizar herramientas similares para beneficio de estas poblaciones.

## Regla 21. Uso permisible del material grabado

De ordinario, las grabaciones de procesos judiciales realizadas conforme a las disposiciones de este Reglamento no forman parte del expediente judicial del caso. Ninguna cinta magnetofónica, video, fotografía o grabación de imágenes o audio adquirida bajo estas reglas, será admisible en evidencia en cualquier otro procedimiento que surja, o en cualquier procedimiento colateral, así como tampoco en la revisión o apelación de tales procedimientos.

El material grabado como resultado de la cobertura electrónica de procesos judiciales conforme a este Reglamento deberá ser utilizado exclusivamente para fines informativos o educativos que promuevan un interés público legítimo. Su utilización estará sujeta al estricto cumplimiento de los principios de la ética periodística, tales como la integridad, la veracidad y la responsabilidad en el

manejo del contenido. Se salvaguardará la dignidad y el respeto de las personas que participen de los procesos judiciales que son objeto de cobertura electrónica.

**Regla 22. Incumplimiento**

El incumplimiento con las disposiciones de este Reglamento o las instrucciones emitidas por el tribunal podrá conllevar, entre otras, la revocación de la autorización concedida para la cobertura electrónica, la exclusión del o de la representante del medio de comunicación del salón de sesiones durante la celebración del proceso judicial bajo cobertura o la imposición de sanciones económicas. El incumplimiento craso, o reiterado, por parte de alguna o algún representante de un medio de comunicación puede acarrear consecuencias más severas, como podría ser su exclusión de la cobertura electrónica de los procesos judiciales por el término que disponga el juez administrador o la jueza administradora de cuya región ocurran los hechos. Esta determinación se realizará en consideración a la severidad de la conducta observada y la frecuencia con la cual el o la representante de un medio de comunicación incumplió con las órdenes del tribunal respecto a la cobertura electrónica de un proceso judicial.

**Regla 23. Derogación**

Se deroga el *Reglamento del Programa experimental para el uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales*, aprobado el 19 de abril de 2013.

**Regla 24. Vigencia**

Este Reglamento entrará en vigor el 1 de octubre de 2026.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Aprobación del Reglamento
del Programa de Cobertura
Electrónica y Difusión de
Procesos Judiciales

ER-2026-02

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió un Voto particular de conformidad.

En San Juan, Puerto Rico, a 18 de mayo de 2026.

La justicia debe ser imparcial, pero también visible. En las democracias contemporáneas, la legitimidad y fortaleza de la institución judicial descansa, en gran medida, en la transparencia con la que se desarrollan sus procesos. De hecho, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de una persona acusada de delito a tener un juicio rápido y público. Art. II, Sec. 11, Const. ELA [Const. PR], LPRA, Tomo 1. Esto se decretó, pues el desarrollo de las democracias modernas identificó la necesidad de que la administración de la justicia no se diera entre cuatro paredes, a espaldas del Pueblo y en contravención de

los principios fundamentales de los derechos humanos.

En Puerto Rico, el Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM) se adoptó por el Tribunal Supremo el 19 de abril de 2013 mediante la Resolución ER-2013-1, entrando en vigor el 1 de julio de ese mismo año. Este programa representó un primer paso hacia la apertura judicial, al promover la visibilidad de los trabajos en nuestros tribunales y acercar los procesos al escrutinio público, sin menoscabar la integridad del proceso adjudicativo. Con el tiempo, su alcance fue ampliándose, particularmente a partir de 2015, y posteriormente durante 2020, a raíz de la pandemia del COVID-19, cuando se incorporaron mecanismos de transmisión mediante plataformas digitales en casos de alto interés público.

De esta manera, la apertura de los procesos judiciales mediante mecanismos de difusión electrónica constituye una de las transformaciones más significativas en la evolución contemporánea de la publicidad judicial. Particularmente después de la pandemia, hay una tendencia creciente a nivel de los estados de los Estados Unidos y a nivel internacional a permitir algún grado de cobertura electrónica, reconociendo que la institución se fortalece cuando las personas pueden observar cómo se administra la justicia. La confianza pública en la judicatura no descansa únicamente en la corrección de sus decisiones, sino también en la posibilidad de que las personas observen que esas decisiones son producto de procesos estructurados, imparciales y sujetos a normas.

Tras más de una década de experiencia, el Poder Judicial de Puerto Rico da un paso adicional en su madurez institucional: transita de un modelo experimental a una política pública de alcance sistémico. Así, se adopta el Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (PROCEDI), que no solo da permanencia a esta apertura, sino que establece un marco normativo integral que delimita responsabilidades tanto para el Poder Judicial como para los medios de comunicación.

A diferencia del PECAM, el PROCEDI extiende su aplicación a todos los centros judiciales y a las distintas etapas del proceso —civil, criminal y apelativo—, y articula un principio rector claro: el acceso a los procedimientos judiciales por medios electrónicos debe ser equivalente al acceso presencial en sala. Esta ampliación, sin embargo, no es absoluta. El Reglamento delimita las etapas que, como norma general, serán objeto de transmisión —como vistas en su fondo y argumentativas— y otras particularmente sensitivas, como las vistas para determinar causa para arresto o causa para acusar, serán transmitidas sí así lo determina el tribunal en el ejercicio de su discreción.

Asimismo, se establecen controles específicos sobre la forma en que se transmite el proceso —como la limitación a planos generales y la prohibición de acercamientos— así como salvaguardas dirigidas a proteger la integridad del proceso, la dignidad de las personas participantes y el funcionamiento adecuado de los tribunales. Este diseño normativo responde a las preocupaciones identificadas por el Tribunal Supremo en

materia de publicidad excesiva, al atender no la publicidad en sí misma, sino su potencial efecto distorsionador sobre la imparcialidad del proceso.

En última instancia, la discusión no es entre la transparencia y el debido proceso de ley, sino sobre cómo armonizarlos responsablemente. Este tema hay que abordarlo con rigor. La experiencia acumulada por nuestra institución y todos los participantes en el sistema de justicia demuestra que la apertura no debilita la justicia cuando se estructura bajo reglas claras, control judicial efectivo y un compromiso genuino por dejar que la verdad aflore. El éxito de este mecanismo para la publicidad de los procesos judiciales depende del compromiso conjunto de los todos los sectores de no ceder ante la tentación de convertir los procesos judiciales en espectáculos, sino en dejar que las personas aprecien sus tribunales en funciones, comprendan que en el sistema de justicia aplican normas y que con ellas las partes defienden sus posturas para obtener remedios que correspondan en derecho. En ese delicado equilibrio entre la transparencia y el debido proceso de ley se fortalece la legitimidad del Poder Judicial, y se reafirma la confianza pública en la administración de la justicia al hacer visible —sin sacrificar imparcialidad ni dignidad— el funcionamiento de una de las instituciones más esenciales para la democracia constitucional.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Aprobación del Reglamento del
Programa    de    Cobertura
Electrónica  y  Difusión  de          ER-2026-0002
Procesos Judiciales

Voto Particular de Conformidad emitido por el Juez Asociado señor
MARTÍNEZ TORRES al cual se unieron los Jueces Asociados señor KOLTHOFF
CARABALLO y señor CANDELARIO LÓPEZ

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Cuando juramenté como Juez Asociado en 2009 destaqué la importancia de cultivar la transparencia en la función judicial. Ceremonia de Juramentación, 175 DPR LXXXV, XCVII (2009). Puntualmente, sostuve lo siguiente:

> Debemos aspirar a que la justicia sea de fácil acceso para todos y que nuestros procedimientos no obstaculicen el que los ciudadanos se enteren de cómo se atienden sus causas. Por el contrario, debemos procurar que los ciudadanos comprendan cada vez más cómo funciona esta Rama. Para ello debemos utilizar los adelantos tecnológicos disponibles. Incluso, en esa misma línea de pensamiento, creo que es tiempo de replantearnos si todavía se justifica la prohibición de la transmisión de los procedimientos judiciales por vídeo y por audio. Íd.

En abril de 2013, este Tribunal emprendió el rumbo hacia la transparencia plena del sistema judicial. En In re C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013), enmendamos el Canon 15 de Ética Judicial para autorizar, provisionalmente, la entrada de equipo audiovisual a ciertos procesos adjudicativos. Además, erigimos el Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan (PECAM), así como el Reglamento correspondiente. Íd. Dos años más tarde, en In re Enmdas. Regl. Uso Cámaras Proc. Jud., 193 DPR 475 (2015), ratificamos indefinidamente el PECAM en las Salas de Recursos Extraordinarios y lo extendimos a una sala de asuntos civiles y a otra de asuntos criminales del Centro Judicial de San Juan. Asimismo, añadimos un mecanismo al Reglamento del PECAM para tramitar solicitudes de cobertura electrónica en el resto de las salas judiciales bajo nuestra jurisdicción. Íd.

Luego de trece años de experiencia, hoy damos un paso agigantado en el sendero hacia la transparencia y legitimación de nuestros foros adjudicativos. Con el Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (PROCEDI), se le da carácter permanente al proyecto de cobertura y transmisión que iniciamos en 2013 y se extiende a todos los tribunales de nuestra jurisdicción.

Los rendimientos que tendrá el PROCEDI —los cuales ya son presagiados por la fase experimental del PECAM— son afines con

el interés apremiante del Poder Judicial de afianzar la confianza del pueblo en los tribunales. Véase, *Plan estratégico del Poder Judicial de Puerto Rico (2020-2025)*. En tanto que vivimos en un sistema de gobierno republicano y democrático, la publicidad del poder estatal en funciones es un elemento crucial para garantizar su ejercicio responsable. Luis M. García, *Juicio oral y medios de prensa: El debido proceso y la protección del honor, de la intimidad y de la imagen*, Buenos Aires, Ed. Ad-Hoc S.R.L., 1995, págs. 19-20. Ciertamente, la cobertura de los procedimientos adjudicativos facilita eliminar los márgenes de arbitrariedad en el comportamiento judicial, ya que permite al público en general conocer y auditar la función adjudicativa. Véase, Asociación de los Derechos Civiles, *Acceso a la información y transparencia en el Poder Judicial: Guía de buenas prácticas en América Latina*, Buenos Aires, págs. 18-19. Así pues, la oportunidad de acceso generalizado al sistema de justicia que supone el PROCEDI cultiva directamente el desempeño prudente de nuestros tribunales, lo que redunda en mayor legitimidad institucional y autoridad del Poder Judicial.

Expresamente, la Regla 6 del Reglamento del PROCEDI dispone que "se busca colocar al público que acceda a la cobertura electrónica de un proceso judicial en igual posición que las personas que acceden a la sala como público visitante". Es decir, el PROCEDI ofrece al pueblo un acceso inmediato al proceso judicial concreto, sin interferencia de los medios de comunicación. Es un hecho que la prensa "no puede sustituir a la publicidad inmediata porque no es neutral, está determinada

por cierta selección de las percepciones fundadas en razones psicológicas, técnicas, comerciales, estéticas, ideológicas, etc.". García, *op. cit.*, págs. 29-30. En ese sentido, con el PROCEDI el pueblo tendrá la oportunidad de un acceso libre de las valoraciones, percepciones y sesgos que terceros puedan interponer. Sin duda, este programa amplifica el interés loable de hacer pública la gestión adjudicativa del Estado, ya que la presencia inmediata del pueblo en los tribunales es insustituible.

No existen fundamentos factuales para determinar que en nuestra jurisdicción otra lógica permea los procesos de naturaleza criminal. No hay un estudio empírico y confiable que demuestre que la cobertura de procesos criminales socava los derechos a un juicio justo y a un jurado imparcial. Más bien, la notoriedad de los hechos delictivos y del caso es la que puede provocar la publicidad excesiva por parte de los medios de comunicación. Es decir, no es la cobertura de un caso la que le da notoriedad, sino que la notoriedad del caso es la que provoca la cobertura mediática. Achacar los problemas que acarrea la publicidad excesiva de un caso a su cobertura y transmisión equivale a confundir la causa por el efecto. En contraste, la transparencia que promovemos a través del PROCEDI arroja luz sobre el proceso y evita que prolifere la información tergiversada, en ausencia de acceso público generalizado a los tribunales.

Con más razón debemos abogar por la transparencia en los procesos preliminares de un caso criminal. A fin de cuentas,

tanto el juicio criminal como las vistas preliminares son públicas. Art. II, Sec. 11, Const. PR, LPRA, Tomo 1, pág. 359; Pueblo v. Elicier Díaz I, 183 DPR 167, 176 (2011). Esto significa que los medios de comunicación tienen acceso a esos procesos, independientemente de que se transmitan o no. Con ello, surgen en igualdad de condiciones los problemas sobre manipulación de información y tergiversación valorativa asociados a estos medios.

En efecto, la sociedad contemporánea se caracteriza por el consumo desenfrenado de información proveniente de fuentes que no necesariamente pasan el cedazo de credibilidad. Ante este escenario contemporáneo, "[l]a publicidad inmediata del juicio ofrece al espectador presente una fuente directa de información y control libre de selecciones y valoraciones previas". García, *op. cit.*, pág. 29.

Con todo, para evitar las dificultades relativas a la cobertura de procesos previos al juicio en un caso de naturaleza criminal, existen mecanismos a disposición del magistrado que permiten dirigir el proceso conforme a principios de justicia e imparcialidad. Véanse, por ejemplo, Regla 6 del PROCEDI y Regla 23(c) de Procedimiento Criminal, 34 LPRA Ap. II. Igualmente, un imputado conserva su derecho a la privacidad, a un debido proceso de ley, a un juicio justo e imparcial y a desinsacular un jurado, si opta por obtener un juicio por jurado.

La toga nos exige considerar sobriamente el balance entre provechos y riesgos. En este caso, dejarnos guiar por los

posibles riesgos que conlleva la cobertura contradice la lección vetusta de la parábola de los talentos. Véase, Mateo 25:14-30. Si bien es cierto que el talento está más seguro enterrado, la recompensa es amiga de quien rinde prudentemente su talento. En consecuencia, no debemos permitir que el temor infundado nos conduzca a adoptar la excepción como norma.

Pese a los reclamos de que con la cobertura y transmisión de los procesos adjudicativos socavamos la solemnidad de la función judicial y abrimos las puertas al entretenimiento masivo, confío en que, con la debida educación de nuestra comunidad y la eventual normalización de la publicidad de los procesos judiciales, el PROCEDI expulsará las últimas penumbras de desconfianza pública en el sistema de justicia. Indefectiblemente, la balanza se inclina a favor de ese interés.

A diecisiete años de mi juramentación como Juez Asociado de este Tribunal, reafirmo con firmeza que la transmisión de los procedimientos judiciales está más que justificada en el interés de fortalecer la legitimidad pública en el sistema de justicia.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales | ER-2026-0002 | |

Voto particular de conformidad emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 18 de mayo de 2026.

> "Televisar los procesos cumple con una función educativa y sirve de desinfectante. Y no sólo eso,... el ciudadano puede fiscalizar, si hay un proceso televisado, el pueblo lo puede ver directamente y puede juzgar si el periodista reportó bien lo que vio, porque ahora no es que 'me dijeron', ahora es que yo también lo estoy viendo. La fiscalización no es sólo para la Rama Judicial, sino también es para el cuarto poder. Eso hace que la cobertura sea más objetiva".
> — Hon. José J. Ramírez Lluch[1]

Desde la aprobación del Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM), advertí que debíamos evolucionar para promover el <u>pleno</u> acceso a los procesos

---

[1] Véase *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 502 (2015) (*Voto particular* del Juez Asociado señor Estrella Martínez), citando a J. J. Ramírez Lluch, *Luces, cámara… acción: Una nueva mirada a la prensa judicial*, en Instituto de Periodismo y Medios de la Universidad Ana G. Méndez.

judiciales dentro de nuestro esquema constitucional. *In re C. 15; Regl. Uso Cámaras Proc.*, 188 DPR 424, 445 (2013) (*Voto particular de conformidad* del Juez Asociado señor Estrella Martínez). Hoy, ejercemos nuestro poder de reglamentación en esa dirección correcta, en virtud de la autoridad concedida al Tribunal Supremo por la Sección 7 del Artículo V de la Constitución de Puerto Rico para adoptar reglas para la administración de los tribunales, y al Canon 15 de Ética Judicial de Puerto Rico.[2]

En aquel entonces, al expresar mi conformidad con la aprobación del PECAM, señalé que su entrada en vigor no debía interpretarse como una limitación a la accesibilidad a la que también aspiraba en todos los tribunales de Puerto Rico, así como en los foros apelativos. Íd., nota al calce 3. Interpretarlo así, resalté, supondría borrar las huellas de apertura mediante "la resaca del hermetismo y la ventisca de la secretividad de los procedimientos". Íd., pág. 447. Lejos de ello, consideré aquel programa experimental como un paso de avance dirigido a ampliar el acceso de la prensa y de la ciudadanía a la información que surge de los procesos judiciales. Íd., pág. 445.

En ese sentido, hoy también se materializa esa aspiración con la derogación del PECAM y la aprobación, en su lugar, del Reglamento del Programa de Cobertura

---

[2] Véanse Art. V, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2023, pág. 437; Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, C. 15.

Electrónica y Difusión de Procesos Judiciales (PROCEDI), el cual establece, en esencia, un marco normativo permanente para regular la cobertura y transmisión de los procedimientos judiciales celebrados en el Tribunal de Primera Instancia, así como de las vistas ante el Tribunal de Apelaciones y el Tribunal Supremo. Con ello, adelantamos el objetivo de promover un mayor acceso de la ciudadanía a los procesos judiciales y reafirmamos nuestro compromiso con un Poder Judicial más transparente, compatible con la sana administración de la justicia, enmarcado en el reconocimiento de las garantías constitucionales y procesales de todas las partes involucradas y, a su vez, con las exigencias y los avances tecnológicos de nuestro tiempo.

## I.

Desde hace décadas, esta aspiración institucional ha sido impulsada por distintas y distintos integrantes del Poder Judicial. Consciente de ello, reconozco el esfuerzo de muchos jueces y juezas de la actual composición, así como de otras y otros que hoy se encuentran retirados, quienes abrieron el camino para que el Reglamento que hoy se aprueba sea una realidad.[3]

---

[3] Los múltiples votos particulares de conformidad emitidos en este asunto, junto con los fundamentos que se complementan entre sí y de los cuales también me hago eco, evidencian el firme apoyo a esta política pública.

A modo de ejemplo, el entonces Hon. Juez Presidente José Trías Monge advertía la importancia de encaminar nuestros esfuerzos y herramientas hacia una mayor apertura y accesibilidad. Asimismo, reconocía que los adelantos tecnológicos podían integrarse responsablemente a la administración de la justicia sin menoscabar los derechos de las partes, especialmente cuando existían precedentes y mecanismos reglamentarios adecuados para atender cualquier interés en conflicto. En esa línea, expresó lo siguiente:

> Hasta ahora, tan solo la prensa, además del público en general[,] goza de libre entrada a nuestras salas de justicia. ¿Por qué excluir a la televisión y a la radio? La tecnología moderna ha desarrollado, por ejemplo, pequeñas cámaras silenciosas que pueden telegrabar los procedimientos judiciales sin interferencia con su desenvolvimiento usual. De estimar que pueden lastimarse los derechos de los litigantes, existe multiplicidad de precedentes para la reglamentación del proceso. En muchas jurisdicciones, debe recordarse también, no se han erigido trabas de ninguna naturaleza y el experimento ha sido exitoso. J. Trías Monge, *Sociedad, derecho y justicia*, Río Piedras, Editorial de la Universidad de Puerto Rico, 1986, págs. 328-329.

Ahora bien, es durante los últimos trece años que se ha desarrollado un esfuerzo institucional sostenido, nutrido por la experiencia acumulada y la evolución jurisprudencial en torno a la cobertura y transmisión de los procesos judiciales, el cual eventualmente desembocó en la aprobación del Reglamento del PROCEDI.

Partiendo de esas consideraciones y recapitulando los inicios del PECAM, junto con la derogación del Canon 15 de Ética Judicial y la adopción de un nuevo canon en su lugar [4], favorecí su aprobación en el 2013, pues siempre

---

[4] Recordemos que, para ese entonces, el Canon 15 de los Cánones de Ética Judicial disponía lo siguiente:

> Las juezas y los jueces mantendrán el proceso judicial en un ambiente de solemnidad y respeto. Tomar fotografías o películas en el salón del tribunal durante la celebración de sesiones judiciales o recesos entre dichas sesiones, y radiodifundir o televisar procedimientos -judiciales, resta dignidad al tribunal, puede distraer al testigo que esté prestando testimonio y puede obstaculizar el logro de un juicio imparcial, por lo que no debe permitirse. No obstante, se podrá permitir la toma de fotografías o películas en ocasiones estrictamente ceremoniales. Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, C. 15 (derogado).

Tras su derogación y la adopción de un nuevo canon en el 2013, el contenido de esa disposición quedó reformulado de la manera que sigue:

> Las juezas y los jueces mantendrán el proceso judicial en un ambiente de solemnidad y respeto.

> Se podrá tomar fotografías o video en el salón del tribunal durante la celebración de sesiones judiciales o recesos y radiodifundir o televisar procedimientos judiciales, solamente según lo autorice el Tribunal Supremo mediante una orden, regla o norma. Éstas garantizarán el acceso del público a los procedimientos judiciales sin que se afecte el logro de un juicio justo e imparcial, sin interrumpir el proceso judicial y sin menoscabar la sana administración de la justicia.

> Se podrá permitir la toma de fotografías o video en ocasiones estrictamente ceremoniales.
> Se podrá permitir el uso oficial de equipo o grabadoras autorizadas por la Oficina de Administración de los Tribunales y el uso de grabadoras o equipo similar por las abogadas y los abogados de las partes.

> Además, se podrá permitir el uso de computadoras portátiles, teléfonos celulares, tabletas, entre otros

estuve "ávido de aprobar reglamentación que brind[ara] mayor certeza y uniformidad" a la cobertura y transmisión de los procedimientos judiciales. *ASPRO, Ex parte*, 192 DPR 961, 972 (2015) (*Voto particular disidente* del Juez Asociado señor Estrella Martínez). **De hecho, mi visión ha sido consecuente en que, como parte de la política institucional del Poder Judicial, la transmisión de los procedimientos judiciales debía convertirse en la <u>norma</u>, y no en la <u>excepción</u>, con independencia del carácter civil o penal de los procesos.** *Televicentro of PR, LLC, Ex parte,* 195 DPR 18, 34 (2016) (*Voto particular disidente* del Juez Asociado señor Estrella Martínez); *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 502-503 (2015) (*Voto particular* del Juez Asociado señor Estrella Martínez); *ASPRO, Ex parte*, supra, pág. 970; *ASPRO et al., Ex parte*, 191 DPR 490 (2014) (*Voto particular de conformidad* del Juez Asociado señor Estrella Martínez).

Como acertadamente observó el Hon. Juez Negrón Marín, esa visión promueve la ágil reformulación reglamentaria de un sistema de tribunales verdaderamente accesible para los

_____

dispositivos electrónicos o equipo similar, para recopilar y transmitir información escrita a través de Internet, siempre que no interfiera con el proceso judicial, su operación sea silenciosa y discreta y no se utilicen para fotografiar, grabar imágenes o audio, radiodifundir ni televisar. No obstante lo anterior, el juez o la jueza podrá restringir o limitar la transmisión en directo de lo que acontece durante el proceso judicial si determina que afectará el logro de un juicio justo e imparcial o la sana administración de la justicia. Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, C. 15.

medios de comunicación en todos los procesos judiciales, máxime ante los avances tecnológicos de la época. J. Negrón Marín, *El acceso a la justicia como parte de la función judicial del Juez Asociado Luis F. Estrella Martínez tras más de una década en el Tribunal Supremo de Puerto Rico*, 5 Rev. Jur. AAPR 159, 177 (2024).

Ahora bien, esta apertura de los procesos judiciales, tanto penales como civiles, nunca puede estar desvinculada de las garantías fundamentales que deben regir todo procedimiento adjudicativo. Por el contrario, esa cobertura y transmisión debe estar sujeta a las salvaguardas y limitaciones aplicables en cada etapa de los procedimientos, a los fines de garantizar los derechos constitucionales y estatutarios de las partes involucradas, cuya protección constituye un deber como Tribunal y resulta imprescindible para el descubrimiento de la verdad. Además, resulta necesario preservar la confidencialidad que requieren determinados asuntos, específicamente aquellos que, por su naturaleza, involucran intereses sensitivos, información privilegiada o derechos de mayor rango constitucional. Del mismo modo, la cobertura y transmisión de los procesos no debe interferir con los trabajos de la sala ni con los mandatos éticos que rigen la función judicial y el ejercicio de la abogacía. *ASPRO et al., Ex parte I*, 189 DPR 769, 785-786 (2013) (Voto *particular de conformidad* del Juez Asociado señor Estrella Martínez).

De hecho, sostuve que en otras jurisdicciones habían logrado armonizar adecuadamente los derechos constitucionales a la libertad de prensa, a un juicio rápido y público en el ámbito penal y a la celebración de un proceso ante un jurado imparcial, junto con otras consideraciones de la más alta jerarquía constitucional. *ASPRO, Ex parte*, *supra*, pág. 971. Sobre todo, reafirmé que Puerto Rico contaba con la capacidad institucional para alcanzar ese balance. Íd. Así, con la aprobación del Reglamento del PROCEDI, se concreta esta visión y se confirma la viabilidad de lo planteado en ese entonces.[5]

## II.

Adviértase también que, durante años, el PECAM sirvió como un instrumento eficaz para demostrar que **la apertura de los procedimientos judiciales y la protección de los derechos fundamentales de las partes no constituyen objetivos incompatibles.** Contrario a ello, la experiencia acumulada bajo ese programa experimental evidenció que los jueces y juezas del Tribunal de Primera Instancia ejercieron su facultad discrecional con mesura, sensibilidad y un profundo sentido de equilibrio al atender

---

[5] Para un examen más amplio del trasfondo histórico y de la evolución del Reglamento del PECAM, véase S. C. Rivera Blanco, *El dilema constitucional que representa la cobertura electrónica de los procesos judiciales en el Tribunal de Primera Instancia*, 89 Rev. Jur. UPR 709 (2020).

los inevitables intereses en tensión que convergen en este tipo de controversias.

En ese contexto, al autorizar las múltiples transmisiones de los procesos judiciales desde el 2013 hasta la actualidad, este Tribunal reiteró que el juez o la jueza que presidiera el asunto objeto de transmisión por los medios de comunicación conservaría la discreción para revocar la autorización concedida o, en su defecto, limitar, restringir o prohibir la cobertura electrónica ante su consideración. **Como cuestión de hecho, en casi trece (13) años de vigencia del PECAM, nunca tuvimos que intervenir para revocar las determinaciones de cobertura y transmisión emitidas por los foros primarios dirigidas a limitar o restringir determinadas etapas o asuntos de los casos transmitidos. Ello demuestra que nuestra judicatura ha sabido ejercer prudentemente su discreción judicial para armonizar la apertura de los procesos con la protección de los derechos e intereses involucrados.**

De igual forma, el Reglamento del PROCEDI preserva ese mismo balance institucional al disponer, en el inciso (d) de su Regla 6, titulada *Principios generales*, que el juez o la jueza que presida el proceso mantendrá la discreción para imponer aquellas limitaciones y exigencias que estime necesarias a fin de garantizar la solemnidad, el decoro y el respeto que deben imperar en todo procedimiento judicial. A ello se añade que, conforme al inciso (e) de

esa misma regla, podrá adoptar cualquier medida necesaria —aun cuando no esté expresamente prevista en el propio Reglamento— para garantizar la integridad y agilidad del proceso judicial. Además, la jueza o el juez contará con la autoridad inherente y discrecional para determinar si se ha incumplido algún mandato reglamentario. Véase inciso (c) de la Regla 6. *Principios generales* del Reglamento del PROCEDI.[6]

De esta manera, el Reglamento del PROCEDI no representa una ruptura con la experiencia previa bajo el PECAM, sino la consolidación normativa permanente de una práctica que, durante más de una década, demostró ser compatible con la sana administración de la justicia. Más aún, la experiencia adquirida confirmó que la transparencia judicial, lejos de debilitar la función adjudicativa, fortalece la confianza de la ciudadanía en sus instituciones al permitir que el Pueblo observe directamente la forma en que se desarrollan los procesos judiciales y se administra la justicia en nuestros tribunales.

---

[6] Para conocer en toda su extensión los principios adoptados mediante el Reglamento del PROCEDI, es preciso remitirse al contenido íntegro de los incisos de la Regla 6. *Principios generales*. Del mismo modo, para examinar las limitaciones y condiciones a las que estará sujeta la cobertura electrónica de los procedimientos judiciales, resulta necesario acudir al texto íntegro de los incisos de la Regla 10. *Restricciones.*

III.

Reitero una vez más, "[e]l acceso a la justicia como derecho fundamental está presente en las acciones que día a día realizan las tres Ramas de Gobierno, al igual que otros componentes de la sociedad". (Subrayado suplido). Véase, L. F. Estrella Martínez, *Acceso a la justicia: Derecho humano fundamental*, 1ra ed., San Juan, Eds. SITUM, 2017, pág. v (Prefacio). Cónsono con ello, la aprobación del Reglamento del PROCEDI equipara al máximo posible el acceso presencial de la comunidad o público visitante al salón de sesiones. En consecuencia, queda maximizado el carácter público de los procesos judiciales como norma general y no como mera excepción. El ejercicio de este poder reglamentario constituye una manifestación concreta de nuestra responsabilidad de propiciar un acceso más amplio, real y efectivo a la justicia como derecho fundamental. Véanse Regla 4. *Propósito e interpretación* y Regla 6(a). *Principios generales* del Reglamento del PROCEDI.

Mediante esta acción, como uno de los tres poderes de gobierno, "nos acercamos más a aquellos pilares que deben caracterizar las sociedades democráticas: libertad de prensa, acceso de la ciudadanía a la información pública y transparencia del Poder Judicial". *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, *supra*, pág. 511. Asimismo, continuamos incorporando los avances tecnológicos como herramientas facilitadoras adicionales al servicio de una sana

administración judicial, más acorde con las exigencias de nuestro tiempo. Negrón Marín, *op. cit.*, pág. 180.

Indudablemente, hoy logramos un avance significativo y dejamos una huella permanente en la tarea de ampliar el acceso del Pueblo de Puerto Rico a la información que día a día surge de nuestros foros judiciales. Después de todo, en una sociedad democrática, los procesos judiciales no deben percibirse como espacios ajenos o inaccesibles, sino como foros públicos cuya apertura fortalece la confianza en las instituciones y reafirma el principio de que la justicia no solo debe impartirse correctamente, sino también de manera visible y accesible.

Así, el paso experimental que representó el PECAM se consolida ahora como una política pública dirigida a ampliar el acceso de la ciudadanía a los procesos judiciales y se convierte, finalmente, en la norma y no en la excepción. Por ello, en armonía con mis pronunciamientos previos desde la adopción del PECAM en 2013, expreso mi conformidad con la aprobación del Reglamento del PROCEDI.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Aprobación del Reglamento          ER-2026-0002
del Programa de Cobertura
Electrónica y Difusión de
Procesos Judiciales

Voto Particular de Conformidad emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 18 de mayo de 2026.

La aprobación del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (en adelante, "PROCEDI"), así como de su reglamento, por parte del Poder Judicial de Puerto Rico, representa un paso trascendental en la modernización de nuestro sistema de justicia. Con dicha iniciativa, esta rama de gobierno reafirma su compromiso con los principios de transparencia, apertura y rendición de cuentas que sostienen la confianza del Pueblo en sus instituciones.

Ese compromiso con la transparencia responde a una realidad fundamental: la justicia no sólo debe

administrarse con imparcialidad, pureza y eficiencia, sino también de manera visible y accesible para toda la ciudadanía. **Cuando el Pueblo puede observar directamente el funcionamiento de los tribunales, se fortalece la comprensión pública del debido proceso de ley y del papel esencial que desempeñan todas y todos los actores del proceso judicial en la protección de los derechos, -- constitucionales, legales y reglamentarios --, que le asisten a las puertorriqueñas y los puertorriqueños.**

En ese contexto, la cobertura electrónica y la difusión de los procesos judiciales constituye un mecanismo idóneo para ampliar el acceso del público a información de indudable interés institucional. Al acercar los tribunales a cada hogar y a cada comunidad, esta herramienta democratiza el conocimiento sobre la aplicación de las leyes y el funcionamiento de nuestro Estado de Derecho.

Así pues, ese acceso ampliado convierte la tecnología en un instrumento al servicio de la justicia y de la educación cívica. Un pueblo informado está en mejor posición para valorar la independencia judicial y para comprender el alcance de los asuntos, -- muchos de ellos en extremo delicados --, que día a día tocan las puertas del tribunal.

A su vez, la cobertura electrónica y la difusión de los procesos judiciales contribuye a preservar la pureza de estos últimos mediante una mayor visibilidad y escrutinio público. Esa exposición responsable fomenta el cumplimiento riguroso con los más altos estándares sustantivos, procesales y éticos

por parte de todas y todos los que participan en la administración de la justicia.

De esta manera, la transparencia no afecta la solemnidad ni el rigor de los procedimientos judiciales. Por el contrario, fortalece la legitimidad de las decisiones emitidas por los tribunales y consolida la credibilidad de una institución esencial para la convivencia democrática.

II.

Ahora bien, establecido lo anteúor, somos conscientes de que toda iniciativa de apertura a los procesos judiciales, -- como la que hoy aquí se anuncia --, debe armonizarse con la protección de los derechos fundamentales de las personas que comparecen ante los tribunales. En ese sentido, es importante destacar que este programa no menoscaba los derechos constitucionales de quienes enfrentan procesos judiciales, ya sea de naturaleza civil o de naturaleza criminal.

Sobre este último extremo, entiéndase, el de la transmisión de los procedimientos de naturaleza criminal, -- tema que ha generado interesantes debates entre quienes la favorecen y quienes se oponen a la misma, y que invitan a la reflexión --, es nuestro deber el dejar meridianamente claro que, a nuestro juicio, y en escenarios como éstos, los derechos a la presunción de inocencia, a un juicio justo e imparcial, y a una defensa adecuada que le asisten a toda persona que enfrenta este tipo de proceso, permanecen intactos e inalterados. Estas garantías continúan siendo pilares

inquebrantables de nuestro sistema de justicia y constituyen la consideración principal en cualquier determinación relacionada con la cobertura de los procedimientos de naturaleza criminal.

En ese sentido, la implantación del programa requerirá prudencia y sensibilidad al evaluar las circunstancias particulares de cada caso. Asegurando así que la difusión electrónica nunca interfiera con la administración justa, imparcial y ordenada de la justicia.

**Ese balance entre apertura y protección constitucional refleja la madurez institucional del Poder Judicial de Puerto Rico. El interés público en conocer el funcionamiento de los tribunales es plenamente compatible con la obligación de salvaguardar los derechos de todas las partes involucradas.**

Cuando ese equilibrio se alcanza, la ciudadanía desarrolla una mayor confianza en las instituciones y comprende con más claridad la importancia de la separación de poderes. Esa confianza fortalece el tejido democrático y reafirma el respeto colectivo por las decisiones judiciales.

## III.

En ese contexto, Puerto Rico se coloca, pues, a la vanguardia de los esfuerzos por modernizar la administración de la justicia mediante el uso responsable de la tecnología. Esta iniciativa responde a las exigencias de una sociedad cada vez más conectada y comprometida con instituciones abiertas y accesibles.

**Y es que, el acceso a la justicia no se limita a la posibilidad de acudir a los tribunales para vindicar derechos. También incluye la oportunidad del Pueblo de conocer cómo se administra esa justicia y de observar el funcionamiento de una de las ramas fundamentales del gobierno.**

Por ello, la transparencia institucional se convierte en una herramienta poderosa para fortalecer la legitimidad del Poder Judicial y promover la rendición de cuentas. Cuando los procesos pueden ser observados por la ciudadanía, se consolida la percepción de que la justicia actúa con integridad, imparcialidad y estricto apego al ordenamiento jurídico.

**La aprobación del PROCEDI representa, en suma, un paso firme hacia un sistema judicial más transparente, más accesible y más cercano al Pueblo, sin comprometer jamás las garantías constitucionales que sostienen nuestro orden democrático. Por ello, estamos conformes con su puesta en vigor.**

Angel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales | ER-2026-0002 | |

**Voto particular de conformidad emitido por el Juez Asociado señor CANDELARIO LÓPEZ.**

En San Juan, Puerto Rico, a 18 de mayo de 2026.

> *Las Reglas de Conducta Profesional[1] y los Cánones de Ética Judicial[2] constituyen una de las principales salvaguardas para garantizar que los procesos judiciales transmitidos electrónicamente continúen desarrollándose de manera justa, ordenada e imparcial.*

Estoy conforme con la adopción del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (PROCEDI). Considero que, administrado de manera prudente y ordenada, este Programa constituye una herramienta valiosa para acercar la ciudadanía al funcionamiento del sistema judicial y promover una mayor educación sobre los procesos adjudicativos. La posibilidad de observar directamente el desarrollo de los procedimientos judiciales contribuye a fortalecer la confianza del pueblo en la administración de la justicia.

Habiendo tenido la oportunidad de presidir como juez de primera instancia procedimientos judiciales transmitidos públicamente, teniendo que adjudicar con

---

[1] *In re Rs. Conducta Prof. PR*, 2025 TSPR 64, 216 DPR __ (2025).
[2] 4 LPRA Ap. IV-B.

conciencia de que todo un pueblo está observando, reconozco que la cobertura electrónica de los procesos judiciales plantea retos particulares que requieren especial prudencia y sensibilidad. Ahora bien, a mi juicio, **las Reglas de Conducta Profesional[3] y los Cánones de Ética Judicial[4] constituyen una de las principales salvaguardas para garantizar que los procesos judiciales transmitidos electrónicamente continúen desarrollándose de manera justa, ordenada e imparcial**. En otras palabras, a mayor difusión de los procesos judiciales, mayor debe ser la disciplina de quienes participan en el proceso. Por tal razón, no es posible desvincular el PROCEDI de los deberes éticos de las personas que ejercen la abogacía.

Es en ese contexto que cobra especial importancia la Regla 3.6 de las Reglas de Conducta Profesional, la cual impone límites éticos dirigidos a proteger la integridad y la imparcialidad de los procesos adjudicativos frente al impacto que puede generar su difusión pública. Esta Regla, entre otras cosas, advierte que la persona que ejerce la abogacía no debe realizar expresiones extrajudiciales de un caso "que conoce o debe conocer razonablemente que será difundida a través de los medios de comunicación pública y que tendrá una alta probabilidad de causar o perjudicar sustancialmente el

---

[3] *In re Rs. Conducta Prof. PR*, 2025 TSPR 64, 216 DPR __ (2025).
[4] 4 LPRA Ap. IV-B.

proceso adjudicativo del asunto". Asimismo, la Regla 3.8 (c)(3) de las Reglas de Conducta Profesional dispone que las personas que ejercen la abogacía como defensores y fiscales deben "abstenerse de hacer comentarios extrajudiciales que tengan probabilidad sustancial de exacerbar la opinión pública en contra de una persona imputada".

Así pues, el acceso ampliado que provee el PROCEDI exige a los abogados y las abogadas una mayor prudencia y responsabilidad profesional en sus expresiones públicas relacionadas con casos pendientes. **La transparencia judicial no puede convertirse en un vehículo para litigar en los medios de comunicación ni para influir indebidamente sobre la percepción pública de un caso.**

Por otra parte, resulta pertinente destacar los deberes éticos que tienen los abogados y las abogadas dentro de la sala, los cuales se amplifican aún más durante la cobertura electrónica de los procesos judiciales. Ello pues **cuando un proceso es observado por el pueblo, cada comparecencia y cada argumento queda expuesto a un nivel de análisis que va más allá de las partes y del foro judicial, lo que exige de todos los participantes una mayor responsabilidad en la manera en que se conducen dentro de sala.**

De esta manera, se entrelaza la Regla 3.3 de las Reglas de Conducta Profesional, sobre la conducta de la

persona abogada ante los tribunales. En ese sentido, debemos recordar que la referida Regla invita al profesional de la abogacía a procurar que en los tribunales prevalezca siempre un ambiente de decoro y formalidad. Ello cobra aún mayor importancia en procedimientos cubiertos por PROCEDI, pues la ciudadanía no solo observará el resultado de los casos, sino también la manera en que se conduce el proceso judicial. Así, la formalidad y el respeto que caracterizan los procedimientos judiciales pueden servir también como un instrumento educativo que permita a quienes observan los procesos a distancia apreciar la dignidad de la función judicial y fortalecer su confianza en la administración de la justicia.[5]

Por otro lado, el PROCEDI provee espacio para la cobertura de procesos judiciales celebrados a través de videoconferencias, en cuyos casos se añade otra dimensión ética que no puede ignorarse. Desde hace algunos años, los tribunales de Puerto Rico, así como jurisdicciones en todo Estados Unidos y en otras partes del mundo, incorporaron las plataformas de videoconferencia como parte regular del quehacer judicial. Esta modalidad sin duda facilita el acceso a la justicia y promueve la eficiencia procesal. No obstante, también trae consigo responsabilidades éticas específicas. Esto ya que la

---

[5] Véase N. S. Marder, *The Conundrum of Cameras in the Courtroom,* 44 Ariz. St. L.J. 1489, 1519 (2012).

práctica de la abogacía de manera virtual obliga a los abogados y las abogadas a considerar, con especial cuidado, sus deberes de competencia y diligencia.

A tenor con lo anterior, la Regla 1.19 sobre competencia y diligencia tecnológica reconoce que la tecnología se ha convertido en una herramienta esencial en la práctica moderna del Derecho. Por ello, esta Regla exige que los abogados y las abogadas mantengan un conocimiento razonable de las capacidades, beneficios y riesgos de las herramientas tecnológicas que utilizan en el ejercicio de la profesión. Así pues, la incorporación de vistas mediante videoconferencias no disminuye las responsabilidades éticas de quienes comparecen ante los tribunales. Por el contrario, en estas vistas la tecnología se convierte en parte indispensable del proceso judicial y, por consiguiente, el abogado o la abogada tiene el deber de adquirir las destrezas necesarias y mantener un conocimiento razonable sobre la tecnología en aras de salvaguardar la integridad del proceso adjudicativo.

Resulta igualmente importante señalar que la legitimidad y efectividad del PROCEDI también descansa en la conducta de quienes presiden los procesos judiciales, a saber, los jueces y las juezas. En atención a ello, los deberes éticos de la judicatura constituyen una garantía adicional indispensable para asegurar que la cobertura

electrónica de los procedimientos judiciales fortalezca la confianza de las personas en la administración de la justicia. Esto ya que, cuando un proceso judicial se transmite al público de forma masiva, la ciudadanía no solo observa las controversias legales del caso, sino también la forma en que el tribunal conduce los procedimientos, trata a las partes, preserva el decoro y respeto que deben caracterizar el foro judicial.

En específico, la experiencia comparada demuestra que muchas de las controversias disciplinarias relacionadas con procesos judiciales grabados o transmitidos giran en torno a la conducta comunicativa de los jueces y las juezas.[6] De esta forma, la cobertura electrónica de los procesos judiciales puede servir también como un mecanismo que fomente una mayor conciencia de los jueces y las juezas sobre los deberes de prudencia y autocontrol que acompañan el ejercicio de la función judicial. Así, más allá de ser un instrumento educativo y de acceso a la justicia, el PROCEDI invita a todos los miembros de la judicatura a observar celosamente los más altos estándares éticos.

Por último, ante las preocupaciones que puedan surgir sobre el efecto que la cobertura electrónica y difusión de los procesos judiciales pudiera tener sobre el debido proceso de ley de las partes, estimo que el

---

[6] Véase S. M. R. Cravens, *Recording Judges: Filling gaps to improve judicial discipline*, 24 J. App. Prac. & Process 1 (2024).

éxito de PROCEDI dependerá, en gran medida, de que todos los componentes del sistema de justicia ejerzan sus funciones con el rigor ético que exige la profesión jurídica. Es decir, considero que las normas éticas y procesales que rigen nuestro ordenamiento jurídico son protecciones para asegurar que la transparencia promovida por el PROCEDI sea compatible con las garantías fundamentales del debido proceso de ley.

Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Aprobación del Reglamento del
Programa de Cobertura
Electrónica y Difusión de
Procesos Judiciales

ER-2026-02

Voto de conformidad en parte y disidente en parte emitido
por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Con la aprobación del *Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales* (Reglamento del PROCEDI), este Tribunal adelanta de manera significativa los principios de transparencia judicial, el fortalecimiento de la confianza pública en la Judicatura y el acceso a la justicia, en armonía con los avances tecnológicos. Así lo reconocemos en la Regla 4, la cual también incorpora un criterio interpretativo orientado a equiparar el nivel de acceso a los procedimientos judiciales con aquel propio de la presencialidad en el salón de sesiones. Debo puntualizar que la aprobación del referido Reglamento constituye el resultado de esfuerzos sostenidos por décadas por esta Curia y el Secretariado de la Conferencia Judicial y Notarial.

A la adopción del Reglamento del PROCEDI le precede la aprobación unánime del Canon 15 de Ética Judicial, mediante la Resolución ER-2013-1 del 19 de abril de 2013. *In re C. 15; Regl. Uso Cámaras Proc. Jud.*, 188 DPR 424 (2013). En esta, derogamos el anterior Canon 15, 4 LPRA Ap. IV-B, y su prohibición de la toma de fotografías, grabaciones de video o audio, así como la difusión de los procesos judiciales por radio o televisión. En cambio, dimos paso al uso de dispositivos y equipos electrónicos para recopilar información sobre lo acontecido en los procesos judiciales, así como a su transmisión a través del internet. Íd.

En dicha Resolución, además, aprobamos el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (Reglamento del PECAM) para regir el proyecto experimental sobre cobertura electrónica de los procesos judiciales celebrados en la Sala de Recursos Extraordinarios del Centro Judicial de San Juan, cuya vigencia se extendió por un año. Íd.

Posteriormente, el Reglamento del PECAM fue enmendado por virtud de la Resolución ER-2015-6 emitida el 15 de julio de 2015. *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475 (2015). Como consecuencia, lo extendimos indefinidamente en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan e incluimos la Sala 901 de Asuntos de lo Civil

y la Sala 1104 de Asuntos de lo Criminal, así como aquellas otras salas que identificáramos mediante Resolución.

En suma, lo que en sus inicios autorizó la difusión de los procedimientos judiciales en un contexto limitado, posteriormente se extendió a casos de naturaleza criminal en otras regiones judiciales, hasta alcanzar la totalidad de los Centros Judiciales de la Isla y a los foros apelativos.[1] En ese devenir, y en aras de superar el esquema piloto regido por el Reglamento del PECAM, hoy adoptamos un nuevo marco normativo que rige la cobertura y difusión de los procedimientos judiciales en Puerto Rico. Por lo tanto, expreso mi conformidad con la adopción del Reglamento del PROCEDI, excepto en los aspectos que expongo a continuación.

A pesar de la flexibilización, nuestra política de acceso no ha sido irrestricta, sino que ha encontrado sus contornos en el ejercicio deliberativo del Pleno y en el balance entre el acceso a la información y la sana administración de la justicia. En este aspecto, el Reglamento del PROCEDI introduce un cambio significativo en cuanto a la autoridad encargada de evaluar, conceder o denegar las solicitudes de cobertura y difusión electrónica de los procedimientos judiciales, pues ahora esa facultad discrecional se comparte con los jueces administradores y juezas administradoras del Tribunal de Primera Instancia o

---

[1] Véase Sarah C. Rivera Blanco, *El dilema constitucional que representa la cobertura electrónica de los procesos judiciales en el tribunal de primera instancia*, 89 Rev. Jur. UPR 709, 724-730 (2020).

del Tribunal de Apelaciones, según corresponda. Véanse, Regla 5(k), Regla 6 (b), Regla 7 y Regla 8. Este cambio responde a consideraciones de eficiencia en la administración de la justicia y al establecimiento de una normativa que uniforme la concesión o denegatoria de dichas solicitudes.

No obstante, las Reglas están ausentes de criterios que orienten el ejercicio de la discreción judicial a los efectos de garantizar un justo balance entre los más altos valores de transparencia, el acceso a la justicia y la protección de los derechos fundamentales. Esta omisión incide en la evaluación de los asuntos penales, particularmente en aquellas etapas preliminares o anteriores al juicio a las cuales no se le ha reconocido el carácter público, o donde la publicidad excesiva de hechos no probados puede menoscabar el derecho a un juicio justo e imparcial. Véase *Pueblo v. Hernández Mercado*, 126 DPR 427 (1990).

En los casos civiles, esta deficiencia se manifiesta en la falta de disposiciones específicas a la difusión electrónica de procedimientos judiciales de órdenes de protección. Como se verá más adelante, en este tipo de procedimiento, por su naturaleza, se ventila información sensitiva cuya diseminación tiene implicaciones que ameritan una atención particularizada. Al incurrir en estas omisiones, el Reglamento del PROCEDI compromete su eficacia normativa y coherencia con nuestro ordenamiento jurídico.

Por lo tanto, disiento de dicha insuficiencia normativa.[2] Veamos.

I

La discreción judicial es un instrumento poderoso para hacer justicia. *Pueblo v. Sanders Cordero*, 199 DPR 827 (2018). Esta se ha definido como el "instrumento esencial al que continuamente recurren los jueces en el desempeño de sus funciones". *Pueblo v. Carrero Rolstad*, 194 DPR 658, 668 (2016). Dicha facultad se encuentra inexorablemente atada a nociones de razonabilidad, conforme al contexto particular en el que se ejerza. Íd. Toda determinación discrecional que exceda ese marco de razonabilidad constituirá un abuso de discreción. Íd. De aquí que, en nuestro ordenamiento, la discreción judicial no es sinónimo de arbitrariedad, sino **una potestad que requiere parámetros, factores, y principios que permitan su ejercicio razonado, revisable y uniforme.**

En ese sentido, el Reglamento de PROCEDI debió incorporar guías que orientaran el ejercicio de la discreción judicial al evaluar las peticiones de cobertura y difusión electrónica, **pues dicha determinación requiere sopesar intereses legítimos del público frente a los derechos fundamentales de las personas involucradas.** A esos

---

[2] Debo precisar que ello no implica el repudio a los principios que informan la apertura judicial. Por el contrario, coincido, y así lo consigno, en que la transparencia judicial, el acceso a la información y la apertura de los procesos constituyen pilares esenciales de un sistema democrático robusto. De aquí que el principio de publicidad no es accesorio, sino consustancial a la legitimidad de los procesos judiciales. Precisamente por la centralidad del referido principio, discrepo de la metodología adoptada por la mayoría de este Tribunal.

efectos, debieron considerarse algunos de los criterios propuestos, como los siguientes: (1) el efecto potencial sobre la conducta de los participantes del proceso; (2) la posibilidad de interferencia con la obtención de un testimonio veraz o con el derecho a un juicio justo; (3) la naturaleza del proceso judicial, incluyendo si se trata de una vista evidenciaria o argumentativa; (4) el interés público y educativo que razonablemente pueda derivarse de la cobertura electrónica; (5) las objeciones fundamentadas que presenten las partes; (6) la viabilidad técnica y logística de realizar la cobertura electrónica sin interrumpir el normal desarrollo de los procesos judiciales; **(7) el efecto sobre cualquier menor que sea parte, testigo potencial, víctima, o que participe del proceso judicial; (8) la necesidad de salvaguardar la identidad, intimidad y seguridad de las víctimas**; (9) el carácter confidencial o privilegiado del proceso judicial; (10) la seguridad y dignidad del tribunal o cualquier otro factor que este considere pertinente para la sana administración de la justicia. Véase, además, Cal. Rules of Ct., r. 1.150.

Asimismo, los criterios esbozados en *Pueblo v. Elicier Díaz I*, 183 DPR 167, 178-79 (2011), ilustran cómo se puede estructurar el ejercicio de la discreción judicial en etapas anteriores al juicio. En el referido caso, reconocimos que, a pesar del carácter público de la vista preliminar, la Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, establece cuatro supuestos en los que se puede celebrar en privado:

(1) cuando se pretenden proteger los derechos constitucionales del imputado a un juicio público, justo e imparcial; (2) cuando la vista privada sea necesaria para proteger cualquier otro interés de naturaleza apremiante; (3) cuando el Ministerio Público interese presentar el testimonio de un agente encubierto que aún se encuentre en funciones o de un confidente, y (4) cuando esté declarando la víctima de un caso de violación o de actos impúdicos o lascivos. Íd.

La inclusión de criterios como éstos le confiere estructura y transparencia a la discreción judicial, además de permitir su revisión bajo estándares ya pautados. En contraste, **la ausencia de un marco de razonabilidad en el Reglamento del PROCEDI obstaculiza la concreción del propósito de uniformar los fundamentos por los cuales se concede o se deniegan las solicitudes de cobertura y difusión electrónica.** Ello, a su vez, puede producir resultados dispares ante situaciones similares, por lo que se erosiona la previsibilidad del Derecho. En definitiva, sin ellos, la discreción judicial ocupa un espacio indeterminado que, lejos de fortalecer la confianza pública, la socava.

## II

Por otra parte, se encuentra la ausencia de medidas específicas que atiendan la difusión electrónica de procedimientos relacionados con **órdenes de protección, particularmente en aquellos escenarios donde se encuentran en juego derechos fundamentales como la intimidad, la seguridad personal y la dignidad.** Esta omisión resulta significativa, pues no solo incide sobre el ejercicio de la discreción judicial al evaluar las solicitudes como ya mencioné, sino que también deja sin atender las limitaciones

y salvaguardas que deben regir en aquellos casos en que dicha difusión sea autorizada.

Cabe resaltar que cuando me refiero a la necesidad de "medidas específicas", aludo tanto a la delimitación de los contornos de la discreción judicial al evaluar las solicitudes de difusión electrónica de órdenes de protección, como a la articulación de restricciones proporcionales en sala que permitan armonizar el derecho a la intimidad con el principio de publicidad de los procedimientos judiciales. Lo anterior cobra particular relevancia en procesos al amparo de estatutos como: Ley contra el acecho en Puerto Rico, Ley Núm. 284-1999, según enmendada, 33 LPRA sec. 4013 *et seq.*; Carta de derechos y la política pública del gobierno a favor de los adultos mayores, Ley Núm. 121-2019, según enmendada, 8 LPRA sec. 1511 *et seq.*; Ley para la prevención e intervención con la violencia doméstica, Ley Núm. 54-1989, según enmendada, 8 LPRA sec. 601 *et seq.*; Ley para la protección de las víctimas de violencia sexual en Puerto Rico, Ley Núm. 148-2015, según enmendada, 8 LPRA sec. 1281 *et seq.*; Ley para prevención del maltrato, preservación de la unidad familiar y para la seguridad, bienestar y protección de los menores, Ley Núm. 57-2023, según enmendada, 8 LPRA sec. 1641 *et seq.*[3]

---

[3] La Regla 10(a) del Reglamento del PROCEDI prohíbe la cobertura electrónica mediante el uso de cámaras fotográficas y de equipo audiovisual de difusión en todo procedimiento de naturaleza confidencial, tales como asuntos de familia y menores. En armonía con ello, la Ley para prevención del maltrato, preservación de la unidad familiar y para la seguridad, bienestar y protección de los menores, Ley Núm. 57-2023, según enmendada, 8 LPRA sec. 1641 *et seq.,* contiene varias

El análisis que sigue reconoce que el tratamiento de este asunto presenta grandes complejidades puesto que, tanto la apertura como las limitaciones excesivas inciden sobre derechos fundamentales, especialmente sobre el derecho a la intimidad. Sin embargo, el silencio reglamentario en este contexto no es neutral, sino que **opera en la práctica como una autorización implícita de la difusión irrestricta, sujeta a la discreción no guiada.** Ello resulta incompatible con los objetivos protectores de las leyes especiales y con el mandato constitucional, reproducido por el propio Reglamento, de salvaguardar la dignidad humana.

Como punto de partida, en *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017), este Tribunal, en el contexto del acceso a información en poder del Estado, reconoció que dicho acceso no es absoluto y que puede limitarse, entre otros supuestos, cuando su divulgación tenga el efecto de lesionar derechos fundamentales de terceros. Asimismo, reiteramos que corresponde al Estado justificar la aplicación de tales excepciones. Íd. Si bien ese caso se circunscribe al acceso de documentos gubernamentales, el principio que de él emana resulta pertinente para el presente análisis: nuestro

---

disposiciones dirigidas a salvaguardar la confidencialidad de estos procedimientos. Asimismo, su Art. 28, 8 LPRA sec. 1694, restringe el acceso al público y la publicidad de expedientes judiciales, por lo que la restricción de la Regla 10(a) encuentra respaldo en el propio esquema estatutario. Sin embargo, los procedimientos de naturaleza penal en etapas previas al juicio al amparo de dicha ley no quedan cobijados por la Regla 10, en tanto no se consideran, como regla general, de carácter confidencial. Esta exclusión resulta problemática, pues deja sin atender la difusión electrónica de procesos en los que, aun sin ser formalmente confidenciales, se ventila información sensitiva. Por ello, disiento de la redacción de la Regla 10, en la medida en que no provee un marco adecuado para atender estos escenarios.

ordenamiento no concibe el acceso ni la publicidad como valores absolutos, sino como intereses que pueden ceder cuando su ejercicio compromete derechos de mayor jerarquía, como la intimidad y la seguridad personal.

Asimismo, en *Fulana de Tal v. Demandado A*, 138 DPR 610 (1995), esta Curia reconoció el interés público en mantener abiertas las salas de los tribunales, el cual se manifiesta en: (1) mantener al público debidamente informado sobre lo acontecido en sala; (2) velar porque los procedimientos judiciales se lleven a cabo conforme a la ley y de manera uniforme para todas las personas; (3) promover la libre discusión de lo que ocurre en los procedimientos judiciales; y (4) fomentar la legitimidad y confiabilidad de las decisiones judiciales.

Ahora bien, en ese mismo caso, reconocimos que **la preservación de la intimidad puede constituir un interés apremiante capaz de justificar una limitación al derecho de acceso público a los procedimientos judiciales de naturaleza civil**. *Íd.* A tales efectos, puntualizamos lo siguiente:

> Si bien existen circunstancias y situaciones que ameritan limitar el acceso público a los procedimientos judiciales, entre las que se encuentra el derecho a la intimidad, **no puede afirmarse abarcadoramente que "el derecho a la intimidad", sin más, debe prevalecer sobre el acceso público a los procedimientos judiciales**. La normativa —que aquí acogemos— consiste en que **se pueda limitar el acceso si existe un interés apremiante que lo justifique y la restricción se ciñe a ese interés, sirve de guía adecuada para los jueces sopesar los intereses en conflicto y resolver a favor del acceso o, por el contrario, de la vista privada.** (Énfasis suplido). *Íd.*, pág. 622.

De ello se desprende que no puede afirmarse categóricamente que el derecho a la intimidad siempre supera

el derecho al acceso público a los procedimientos judiciales, pero la proposición inversa tampoco es correcta. Cuando la divulgación de información pueda lesionar ese derecho fundamental, corresponde sopesar los intereses en conflicto y determinar si procede mantener el acceso o imponer una restricción cuidadosamente ceñida al interés que se pretende proteger.

Ese análisis, sin embargo, no puede realizarse sin considerar el contexto actual. Nos encontramos en una etapa de transformación de nuestro sistema judicial, marcada por la digitalización de expedientes, el acceso remoto a las salas de los tribunales, y la difusión en tiempo real. En ese nuevo paradigma, **la publicidad deja de ser localizada y temporal, y adquiere un carácter permanente, replicable y global.** A tales efectos, la difusión electrónica dentro de un entorno digital caracterizado por el alcance masivo de la información introduce riesgos cualitativamente distintos a los de la publicidad tradicional, los cuales deben ser evaluados con mayor detenimiento.

A su vez, la difusión electrónica de los procesos judiciales adquiere una dimensión distinta cuando incumbe las vistas sobre órdenes de protección al amparo de los estatutos antes mencionados. Ello obedece a que la difusión electrónica amplifica tanto el alcance como la permanencia de datos de identificación, tales como el nombre, número de teléfono, u otra información que permiten la localización de las víctimas, lo que reviste especial gravedad en contextos

de acecho o violencia doméstica, al incrementar los riesgos concretos a la seguridad personal. Asimismo, puede propiciar una intromisión indebida en su derecho a la intimidad, en la medida en que, durante estos procedimientos suele ventilarse información altamente sensitiva que incide directamente sobre la esfera más íntima de las personas involucradas.

De conformidad, el Reglamento de PROCEDI deja de considerar la participación efectiva que pueda tener la víctima en esa evaluación del impacto que pueda tener sobre su seguridad e intimidad. Por lo tanto, otro elemento a considerarse es el grado de control de la víctima sobre la información que se divulga. Como ha sido reconocido en la literatura jurídica, la noción de intimidad no se limita a la mera protección contra la divulgación en sí misma, sino que comprende la facultad de las personas de ejercer control sobre qué información se divulga.[4] Véase Rebecca Hulse, *Privacy and Domestic Violence in Court*, 16 Wm. & Mary J. Women & L. 238, 250 (2010).

No obstante, este análisis no prescinde de la consideración de aquellos casos en que la propia víctima interese la difusión del procedimiento. La autonomía de la víctima y su facultad de decidir sobre la divulgación de aspectos de su vida íntima también constituye un elemento relevante dentro del proceso de ponderación. **Sin embargo,**

---

[4] En ese sentido, la posibilidad de que los medios de comunicación presenten solicitudes de cobertura electrónica en términos breves, arroja interrogantes en torno a si se cuenta con una oportunidad real de oponerse de manera informada.

**dicha voluntad no puede ser considerada determinante en todos los casos.** Ello, por cuanto los efectos de la difusión electrónica trascienden, en muchas ocasiones, el ámbito de control individual, y el alcance masivo puede generar consecuencias que no se agotan (o son continuas) al momento de la decisión inicial de autorizar su difusión, ni se limitan exclusivamente a la persona que la consiente. Por consiguiente, aun cuando la víctima manifieste su interés en la difusión, corresponde al tribunal evaluar, a la luz de los demás intereses en juego, si dicha autorización es compatible con la protección de su seguridad, su dignidad y la integridad del proceso judicial.

De igual forma, se debe considerar los derechos de la parte contra quien se solicita la orden de protección. Si bien estos procedimientos persiguen un fin eminentemente protector, ello no desplaza las garantías procesales que le asisten. Nótese, que la divulgación electrónica de los procedimientos de órdenes de protección también puede incidir sobre su esfera personal, particularmente cuando se ventilan alegaciones que aún no han sido adjudicadas en sus méritos.[5] Por lo cual, estos intereses deben ser igualmente ponderados al momento de avaluar la procedencia de la cobertura y difusión electrónica.

---

[5] Sobre órdenes *ex parte*, véase, por ejemplo: Art. 7 de la Ley Núm. 284-1999, 33 LPRA sec. 4017; Art. 13 de la Ley Núm. 121-2019, 8 LPRA sec. 1523; Art. 2.5 de la Ley Núm. 54-1989, 8 LPRA sec. 625.

En concordancia con todo lo anterior, la transformación de los procedimientos judiciales en la era tecnológica exige **repensar, no abandonar el principio de publicidad.** A esos fines, la distinción entre **acceso** y **difusión** se torna crucial. Esto es, el acceso público a los procedimientos judiciales en estos casos puede mantenerse, **mientras que la difusión electrónica debe ser calibrada a la luz de los riesgos particulares de cada tipo de proceso.** Esa protección, como ya mencioné, adquiere una nueva dimensión cuando se trata de víctimas cuya seguridad física y emocional puede verse directamente comprometida por la divulgación de información que le hace identificable. La evidencia empírica y la experiencia comparada apuntan a riesgos concretos como la intimidación de víctimas y testigos, reiteración de conductas violentas, acecho facilitado por información pública, y procesos de revictimización. Hulse, *supra*, en la pág. 265.

### III

Sin duda, el Reglamento que hoy adoptamos constituye un paso importante y, no cuestiono la validez de los objetivos perseguidos por el Reglamento de PROCEDI ni la presunción de apertura. En cambio, cuando confluyen derechos fundamentales como la libertad de expresión y de prensa, y el derecho a la intimidad y a la dignidad humana, el derecho exige algo más que discreción: **exige criterios, contornos y una arquitectura normativa que permita armonizarlos de manera coherente.** No obstante, al omitir la articulación de

criterios específicos, se aprueba sin abordar las tensiones más complejas que precisamente estaba llamado a resolver.

A mi juicio, es necesario adoptar un modelo que, sin renunciar al principio de publicidad, estructure la discreción judicial mediante criterios claros y sitúe la protección de las partes y las víctimas como eje normativo central. Solo así puede asegurarse la ponderación adecuada entre los intereses en conflicto y afirmarse que contamos con un reglamento verdaderamente atemperado a la realidad digital que ya nos alcanza.

Camille Rivera Pérez
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|---|---|---|
| Aprobación del Reglamento del Programa de Cobertura Electrónica y Difusión de Procesos Judiciales | ER-2026-2 | |

Voto particular disidente emitido por la Jueza Asociada señora Pabón Charneco al que se unió el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Al aprobarse las enmiendas al *Reglamento del Programa Experimental para el Uso de Cámaras y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales* (PECAM), expresé mi disenso en torno a la expansión del Programa a las Salas de lo Criminal.[1] Hoy, casi once (11) años luego de implantarse esos cambios, reafirmo mi postura.

La difusión en los medios de comunicación de las incidencias que tienen lugar en estos espacios representa una carga inusual a los componentes del Sistema de Justicia y una perturbación al desarrollo de los procesos judiciales. Entre otras cuestiones, debemos considerar: (1)

---

[1] Véase, *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 490 (2015) (Voto particular de conformidad en parte y disidente en parte emitido por el Juez Asociado señor Rivera García, al que se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón).

los recursos necesarios para supervisar adecuadamente esta actividad;[2] (2) el efecto adverso sobre los testigos, abogados(as) y jueces(zas); (3) la dificultad potencial para conseguir un jurado imparcial en los casos penales, y (4) el reto de que los componentes que participan del Sistema Adjudicativo se contaminen con lo que se transmite.[3]

En los casos criminales, este tipo de asunto nos requiere sopesar las garantías constitucionales de libertad de prensa y los derechos de las personas acusadas, asegurando que se adjudiquen los casos de manera justa e imparcial.[4] En cuanto a esto, el Tribunal Supremo de los Estados Unidos ha reconocido que la Sexta Enmienda de la Constitución Federal no confiere un beneficio especial a la prensa ni exige que un juicio, o cualquier parte de este, se transmita al público general.[5] Más importante aún, dicho

---

[2] Con respecto a esto, téngase en cuenta que en la Propuesta remitida por el Secretariado de la Conferencia Judicial y Notarial se reconoce que el personal de la Oficina de Prensa del Poder Judicial es limitado, por lo que, al solicitarse la cobertura electrónica simultánea en más de una vista, este personal se verá impedido de atenderlas. Lo anterior, disminuyendo las ocasiones en las que el equipo de cámaras se maneje por el tribunal y se tenga el control sobre las imágenes y el audio transmitido. Véase, Secretariado de la Conferencia Judicial y Notarial, *Propuesta para derogar el Programa Experimental para el Uso de Cámaras y de Equipo de Difusión Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM) y crear el Programa de Cobertura Electrónica y Difusión de Procesos Judiciales (PROCEDI)*, Tribunal Supremo de Puerto Rico, 2025, pág. 29.

[3] Este tipo de planteamientos generalmente respalda posturas en contra de la difusión electrónica de procesos judiciales. Véase, *Application of CBS, Inc.*, 828 F.2d 958, 959, 14 Media L. Rep. (BNA) 1636 (2d Cir. 1987).

[4] E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, San Juan, Ed. Situm, 2018, págs. 388-389.

[5] Véase: *Nixon v. Warner Communications, Inc.*, 435 US 589, 610 (1978).

Foro ha dejado la puerta abierta a que una parte acusada plantee que la transmisión y grabación de su caso tuvo el efecto de violentarle su debido proceso de ley.[6] Igualmente, es de notar que la Regla 53 de Procedimiento Criminal federal, 28 USC sec. 455, prohíbe la toma de fotografías o la radiodifusión de los procedimientos judiciales. Asimismo, en el ámbito civil y de quiebras, la Conferencia Judicial de los Estados Unidos ha aprobado políticas otorgándole discreción a los jueces y las juezas para permitir la trasmisión de audio en vivo, en cualquier etapa que no sea la de juicio o en la que esté testificando algún testigo.[7]

Ante esta realidad, debemos preguntarnos si la postura que hoy perpetúa este Foro, al validar la cobertura audiovisual en prácticamente todo procedimiento, es la correcta. En particular, debemos cuestionarnos si este proceder se ajusta a los mejores intereses de las partes

---

[6] Específicamente, el Tribunal Supremo de los Estados Unidos ha dispuesto que:

> "a defendant has the right on review to show that the media's coverage of his case—printed or broadcast—compromised the ability of the jury to judge him fairly. Alternatively, a defendant might show that broadcast coverage of his particular case had an adverse impact on the trial participants sufficient to constitute a denial of due process". *Chandler v. Florida*, 449 US 560, 581 (1981).

Véase, además, lo resuelto por el Máximo Foro federal en *Estes v. State of Tex.*, 381 US 532 (1965) y *Sheppard v. Maxwell*, 384 US 333 (1966).

[7] W.R. LaFave, *et als.*, *The Adversary System and the Determination of Guilt and Innocence*, 6 Crim. Proc. sec. 24.1(b) (5th ed.). Véase, además: History of Cameras, Broadcasting, and Remote Public Access in Courts en https://www.uscourts.gov/court-records/access-court-proceedings/remote-public-access-proceedings/history-cameras-broadcasting-and-remote-public-access-courts. (última visita, 17 de abril de 2026).

que acuden ante nuestros tribunales o si, *a contrario sensu*, se presta para afectar derechos esenciales en muchos de los escenarios. Adviértase que la práctica de este Tribunal bajo el PECAM ha sido a autorizar, salvo en contadas excepciones, prácticamente todas las solicitudes que se presentan. Esto aun en instancias en las que las partes se oponen con fundamentos de peso o se incumplen requisitos reglamentarios para ello.[8] A su vez, es de notar que recientemente la Oficina del Procurador General de Puerto Rico ha asumido una postura en contra de la transmisión y grabación de procesos de naturaleza penal, con el fin de proteger a las partes, los testigos y el interés de la justicia. Como fundamento, alude en sus escritos a la Ley Núm. 22-1988, según enmendada, conocida como *Ley de la Carta de Derechos de las Víctimas y Testigos de Delito*, 25 LPRA sec. 973a.

Al igual que el Procurador General, considero que la presencia de cámaras en los casos penales tiene un efecto negativo en la presentación de la prueba. No cabe duda de que los testigos y las víctimas de delito pudieran sentirse intimidados ante el hecho de que su imagen y testimonio sea grabado y transmitido en televisión y a través de las distintas plataformas de internet. Dicho temor pudiera conllevar que muchas veces se nieguen a comparecer o

---

[8] Según los datos suministrados por la Secretaría de este Tribunal, durante el término de julio de 2024 a junio de 2025 se presentaron un total de trece (13) peticiones de transmisión y grabación. Todas fueron autorizadas.

restrinjan sus declaraciones, lo que tiene el efecto de impactar adversamente uno de los pilares de nuestro Sistema de Justicia, a saber: la búsqueda de la verdad.

Por otro lado, existen algunos puntos que, a mi juicio, requerían de mayor atención al aprobarse el presente Reglamento. Así, por ejemplo, aludo a la falta de mecanismos para educar al público general y a la prensa sobre aspectos jurídicos de los distintos procesos.[9] No se hizo antes de enmendarse el Reglamento del PECAM y tampoco se hace ahora. Como mencionamos en aquel entonces:

> [m]ientras no se desarrolle e implemente ese componente educativo, las transmisiones no serán más que una pieza de entretenimiento cual programa de "reality show" que no abonará a tan importante interés de fomentar la confianza del Pueblo de Puerto Rico en nuestro sistema de justicia. Por el contrario, la integridad de[l Poder Judicial] quedará —como, en efecto, queda en este momento— a la merced del *escrutinio desinformado*, que al final del día podría redundar en un mayor grado de desconfianza en nuestro sistema de tribunales y sus componentes. *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 501 (2015) (Voto particular de conformidad en parte y disidente en parte emitido por el Juez Asociado señor Rivera García, al que se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón).

Asimismo, me alarma la falta de consideración brindada a las inquietudes levantadas por los jueces y las juezas de nuestros foros inferiores, pilares de nuestro Sistema de Justicia. Al proponerse las enmiendas al Reglamento del PECAM fueron varias las preocupaciones de este

---

[9] Esto, más allá de los adiestramientos que se contemplan dirigidos al funcionariado del Poder Judicial y a los medios de prensa sobre la naturaleza y el alcance del Reglamento aprobado.

importantísimo grupo, el cual no identificó aspecto positivo o favorable alguno sobre el uso de las cámaras fotográficas o el equipo audiovisual en las Salas Criminales. Entre las razones en contra de las enmiendas propuestas en ese entonces podemos resaltar: (1) la seguridad de las personas envueltas en el proceso; (2) las parodias y las burlas que se propician; (3) el aumento en el desconocimiento y en la desinformación de la ciudadanía; (4) el uso indebido de la información; (5) la exposición mediática de testigos y agentes encubiertos; (6) el efecto negativo en el orden y la solemnidad de los tribunales, y (7) el interés en cubrirse aspectos dramáticos y morbosos de los casos.[10]

De igual forma, los jueces y las juezas hicieron manifestaciones en contra de la expansión del PECAM a los casos penales, pues les preocupaba el "efecto adverso que tendría en la presentación de prueba testifical en casos criminales y sobre la posibilidad de someter a las personas afectadas a una doble victimización, tanto por el proceso judicial como por los medios de comunicación".[11] Así, "en cuanto a las vistas preliminares, las vistas de supresión de evidencia o confesión, los juicios por tribunal de

---

[10] *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, *supra*, págs. 498-499 (citando a Secretariado de la Conferencia Judicial y Notarial, *Informe: evaluación sobre la efectividad del uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales*, Tribunal Supremo de Puerto Rico, 2014, págs. 160-161).

[11] Íd., pág. 500 (citando *Informe: evaluación sobre la efectividad del uso de cámaras* […], págs. 163-164). (Énfasis suprimido).

derecho y los juicios por jurado, estos no favorecieron la cobertura electrónica debido a la presentación de prueba testifical".[12] Al mismo tiempo, los jueces y las juezas enfatizaron "la posibilidad de que se intimiden, amedrenten o se influencien las personas testigos por la exposición en los medios".[13]

En la actualidad, el grupo selecto de jueces y juezas del foro primario que fue cuestionado sobre el tema reflejó resistencia a base del derecho a la propia imagen.[14] Igualmente, un examen de los resultados del cuestionario que condujo el Secretariado de la Conferencia Judicial y Notarial para preparar la Propuesta para derogar el PECAM y crear el PROCEDI demostró que los jueces y las juezas de los tribunales inferiores poseen opiniones variadas con respecto a la transmisión y grabación de los procesos. Tanto estos, como los abogados y fiscales entrevistados manifestaron opiniones negativas basadas, principalmente, en la percepción que tienen de los medios de comunicación.[15]

Por otra parte, me preocupa que se apruebe este Reglamento sin un estudio previo que evalúe el efecto que ha tenido transmitir en los medios electrónicos las

---

[12] Íd., pág. 499 (citando *Informe: evaluación sobre la efectividad del uso de cámaras* […], pág. 48). (Énfasis suprimido).

[13] Íd.

[14] Véase: *Propuesta para derogar el PECAM y crear el PROCEDI*, pág. 3.

[15] Íd., pág. 73.

incidencias de los distintos procedimientos. Inclusive, ni tan siquiera se llevó a cabo una consulta a la comunidad jurídica en general, aun cuando sabemos que se han levantado inquietudes por el efecto desfavorable de las transmisiones en la búsqueda de jurados imparciales, entre otras cosas.[16] La difusión descomedida de etapas iniciales en los casos penales (como las Vistas de Causa para Arresto o las Vistas Preliminares) presenta un peligro de contaminación a potenciales jurados.[17] Lo anterior, puesto que muchas personas se exponen al análisis y la adjudicación mediática de la prueba que se presenta en estas etapas preliminares de los procesos.[18] A su vez, la

---

[16] Véase, https://www.elvocero.com/ley-y-orden/urgen-evaluar-impacto-de-transmisi-n-de-procesos-judiciales/article_6fc70565-1ab8-4fbf-83d5-184a4280bb1b.html (última visita, 13 de abril de 2026). Véanse, además, https://aldia.microjuris.com/2026/04/27/de-lo-que-no-estamos-hablando-sobre-la-transmision-de-los-procesos-judiciales/ (última visita, 29 de abril de 2026).

[17] Esto, afectando el derecho a ser juzgado por un jurado imparcial. Art. II, Sec. 11, Const. PR, LPRA Tomo 1 & Emda. VI, Const. EE.UU., LPRA Tomo 1. Véase, además, Y. Quiñones Acevedo, *La transmisión televisiva de la vista preliminar y su efecto sobre el derecho a un juicio justo ante un jurado imparcial*, 94 Rev. Jur. U.P.R. 385, 405 (2025) ("[P]ermitir que se televisen las vistas preliminares representa el riesgo para el imputado de ser privado de un juicio justo, toda vez que podría suponer un jurado prejuiciado con ideas preconcebidas").

[18] Es posible que, ante el desconocimiento, los medios y el público en general malinterpreten el silencio de la persona acusada o el hecho de que esta no presente prueba a su favor como una especie de admisión de los hechos imputados, cuando en realidad se trata del ejercicio de derechos esenciales reconocidos por nuestro ordenamiento jurídico. Toda persona acusada tiene derecho a permanecer callada y no tiene que presentar evidencia a su favor, pues es el Estado quien tiene que probar su caso. Véase, *Pueblo v. González Colón*, 110 DPR 812, 818-819 (1981); Art. II, Sec. 11, Const. PR, LPRA Tomo 1; Regla 110 de Procedimiento Criminal, *supra*. De igual forma, la transmisión de instancias iniciales pudiera provocar que se le dé un peso mediático errado a prueba que posteriormente no sea admisible en juicio. Como es sabido, a diferencia de la Vista Preliminar, la determinación de causa probable para arresto al amparo de la Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, no tiene que estar basada en evidencia admisible en la etapa de juicio. *Pueblo v. Nogales Molinelli*, 2024 TSPR 139, pág. 10, 215 DPR __ (2024) (Sentencia); E.L. Chiesa Aponte,

transmisión de vistas tiene el efecto de deformar la naturaleza de las etapas iniciales al extender innecesariamente su duración y presentarse prueba en exceso de la requerida. Del mismo modo, expone indebidamente a las víctimas, testigos, familiares, abogados, jueces y funcionarios del Poder Judicial a las críticas y al escrutinio público, arriesgando la seguridad de estos y diseminando sus imágenes de manera indefinida por los medios electrónicos. Como resultado, sus vidas se ven afectadas por participar de un proceso cuyo fin no debe ser ese.

Nótese que estas incomodidades también las comparten algunos componentes de la Asamblea Legislativa, quienes presentaron recientemente medidas con el propósito de atenderlas. Así, por ejemplo, mediante la Resolución de la Cámara Número 661 se ordenó a la Comisión de lo Jurídico de ese cuerpo a realizar una investigación exhaustiva sobre el impacto que tiene la transmisión y difusión mediática masiva de los procesos judiciales en etapas previas al juicio sobre la imparcialidad de los procesos, los derechos constitucionales de la persona acusada, la percepción pública del Sistema de Justicia Penal y la protección de testigos, víctimas, familiares y demás partes.[19] Simultáneamente, se presentó el Proyecto de la Cámara Núm.

---

*Procedimiento Criminal y la Constitución: Etapa Investigativa*, San Juan, Ed. Situm, 2017, pág. 344.

[19] R. de la C. 661, 7 de abril de 2026, https://sutra.oslpr.org/medidas/160890.

1211 para añadir un inciso (d) a la Regla 6 y enmendar el inciso (c) de la Regla 23 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, y así prohibir la transmisión, difusión o retransmisión, por cualquier medio, de las vistas de causa probable para arresto y vistas preliminaries.[20]

Dicho todo esto, de ninguna forma debe interpretarse que expongo una postura en contra de la presencia de la prensa en las Salas Civiles y Criminales de los tribunales. Reconozco el derecho constitucional que tienen los medios de comunicación a la libertad de prensa, tanto al amparo de la Constitución de Puerto Rico como bajo la Constitución de los Estados Unidos.[21] Con lo que no estoy de acuerdo, sin embargo, es con el uso de cámaras y de equipo de difusión audiovisual para transmitir y grabar lo que ocurre en una Sala Criminal o Civil de naturaleza sensitiva. La prohibición de cámaras de televisión y de fotografías en vivo durante un procedimiento judicial no es incompatible con los derechos que tiene la prensa en nuestro ordenamiento jurídico.[22] Los medios de comunicación pueden ejercer sus prerrogativas compareciendo presencialmente al tribunal a observar y reportar posteriormente lo que

---

[20] P. de la C. 1211, 8 de abril de 2026, https://sutra.oslpr.org/medidas/160903.

[21] Art. II, Sec. 4, Const. PR, LPRA Tomo 1 & Emda. I, Const. EE.UU., LPRA Tomo 1. Véase, además: E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, San Juan, Ed. Situm, 2018, págs. 384-385.

[22] Chiesa Aponte, *op. cit.*, pág. 406.

ocurrió, como de ordinario han hecho. Es decir, no hay que exponer los derechos constitucionales de las personas a ser potencialmente transgredidos so pretexto de mantener informada a la ciudadanía.

Hoy, una Mayoría de este Tribunal obvia las recomendaciones y comentarios de sus propios jueces y juezas que rechazan la transmisión de los procedimientos, no porque estén en desacuerdo con la transparencia judicial, sino porque afecta la integridad de los casos. Además, delegan la función de educar y comentar sobre los procesos a los "medios de comunicación" los cuales, según la definición del propio Reglamento, puede ser cualquier persona o entidad. La decisión que toman mis compañeros y compañeras de estrado pone en riesgo la confianza en nuestro Sistema de Justicia. Esto no es transparencia, es la conversión de procesos judiciales en escenarios de entretenimiento masivo con todas las consecuencias que ello acarrea para la imparcialidad, confianza y legitimidad de los tribunales.

La función constitucional de administrar la justicia "no debe quedar supedit[a] a los intereses de ningún grupo en particular y mucho menos a la opinión pública; más aún, cuando actualmente grupos como la prensa de [Puerto Rico] cuentan con el acceso constitucionalmente necesario a nuestros procedimientos".[23] Este Tribunal tiene que velar por la protección de las garantías constitucionales de las

---

[23] *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, *supra*, pág. 501.

personas que acuden ante nuestros foros. Con la reglamentación que hoy se aprueba no se protege esa encomienda.

Por todo lo anterior, **disiento**.


Mildred G. Pabón Charneco
Jueza Asociada